CHARLES STURGES *vs.* LEWIS RAYMOND AND ANOTHER.

By the term " stray beast in a suffering condition," as used in the statute (Rev. Stat., tit. 59, § 5,) which provides for proceedings in case of the finding of any such beast, is intended any beast found astray, and likely, unless taken care of, to suffer injury, or be wholly lost to the owner.

TRESPASS for taking and driving away certain cattle of the plaintiff. The defense was that they were taken up and disposed of as stray cattle under the provisions of the statute on the subject. The statute, (Rev. Stat., tit. 59, § 5,) provides for the taking up, care and ultimate disposition of " any stray beast in a suffering condition."

The plaintiff denied that the cattle, when taken by the defendants, were stray beasts, or in a suffering condition ; and claimed to have proved that he put them to pasture in his own inclosure, adjoining the land of the defendants, about six weeks before they were taken by the defendants, where they continued until a day or two before they were taken, when they broke out of his inclosure into the defendants' land, and were there taken by the defendants ; and that, when so taken, they were known by the defendants to be his property ; and that at the time they were taken, there was in his inclosure, and on the defendants' land into which they broke, and on the public highways and commons, an abund-

ance of pasture for their sustenance, and that they were not suffering, or in danger of suffering, from want of food, and were not in any other respect in a suffering condition. No claim was made that the cattle were not in perfect health, or that they were in immediate want of food, but the defendants claimed to have proved that they were, and for a considerable time had been, running at large, without the apparent care or control of any owner, and were in low condition in regard to flesh; and they prayed the court to charge the jury, that if a man finds beasts astray, which continue so for a considerable time, without any one ostensibly exercising ownership over them, or taking any care of them, and being apparently in low condition, they are " stray beasts in a suffering condition," within the meaning of the statute, whether the owner be known or unknown.

The court charged the jury as follows:

" A stray beast is one that has left an inclosure, and wanders at large without its owner, and beyond his control. Whether the animal is a " stray beast" within the meaning of the statute or not, does not depend upon the question whether the owner is known or not, but whether it is wandering out of the inclosure to which it was committed, without and beyond the control of its owner, and roving about at its own will. If the cattle in question were so wandering about, in fact, under such circumstances as reasonably to induce and justify the belief that they were stray beasts, and the defendants, when they found and took them up, honestly believed them to be astray, and the cattle were in fact in a suffering condition, then the defendants were justified in taking them and treating them as stray beasts, otherwise they were not. And by the " suffering condition" mentioned in the statute, was meant a condition in which the animal itself endured pain, distress, inconvenience or damage, for want of food or other cause, and needed relief for its own sake."

The jury returned a verdict for the plaintiff, and the defendants moved for a new trial.

*Ferry,* in support of the motion.

*Belden* and *Carter,* contra.

PARK, J. The question made in this case is confined to the proper construction of the phrase "suffering condition," as used in the fifth section of the "act concerning wrecks, unclaimed goods and strays." The court below, in its charge to the jury, defined the expression as follows :—" That, by the suffering condition mentioned in the statute, was meant a condition in which the animal itself endured pain, distress, inconvenience or damage, for want of food or other cause, and needed relief for its own sake," and the question is, whether, under the circumstances of the case, the charge is correct.

A casual examination of the statute in question might suggest, that the legislature in passing the same were actuated solely by feelings of humanity for stray animals in distress, and were consequently solicitous to afford them the means of relief, and that therefore, before a person would be justified in applying the provisions of the statute to a beast found astray, he should be satisfied that the animal was experiencing pain, arising from want, disease or accident of some kind; but a careful examination of the statute will lead to the conclusion, that the principal object the legislature had in view was the preservation and restoration of the animal as property to the owner.

This is evident from the fact, that in the same section of the statute in which the phrase in question is found, a similar provision is made for the restoration of lost goods to the owner, and no good reason can be shown why the owner should have been lost sight of by the legislature in the one case any more than in the other. The other sections of the statute point likewise to the same conclusion. The sections in relation to wrecks, in relation to unclaimed goods, and to logs floating down the Connecticut and Housatonic rivers, were evidently made for the benefit of the owner, and, being found in the same statute with the section in question, go to

show that the legislature could not have been unmindful of the owner in passing the provisions in question, for beasts are regarded as property, and there was as much necessity for the legislature to protect the owner from loss in this species of property, as there was in goods, wares and merchandize; and it is therefore reasonable to suppose, that what induced the legislature to act in the one case, likewise induced them to act in the others, when the necessity of acting was similar in all.

In construing statutes like the one under consideration, a liberal construction should be given to the terms made use of by the legislature, in order to suppress the mischief and advance the remedy intended; for it is to be presumed, that when the legislature pass a remedial statute, that has for its object the promotion of important public interests, they intend to cover the whole ground, and the terms they make use of should be so construed, if it can be done without doing absolute violence to the language used. Hence, in the construction of such statutes, it oftentimes becomes necessary to go beyond the strict letter of the law, and bring within its provisions what the strict letter would exclude.

Applying this principle to the statute in question, it is clear that the legislature could not have used the phrase in question in a literal sense; for a literal construction, it is easy to see, would embrace but a part of the evil that the legislature must have intended to remedy. Many cases might be supposed where animals might be found exposed to certain destruction, and when, in all reasonable probability, no relief from the owner could be had. In such cases must the finder wait until the threatening mischief shall come, before he would be justified in applying the provisions of the statute for the owner's benefit? Suppose an animal should wander a hundred miles from the owner, and become wholly lost to him unless the provisions of the statute should be applied to the case; did not the legislature suppose that they had made provision for such a case by passing the statute in question, although perhaps it could not be said that the

Sturges v. Raymond.

animal when found was suffering from want, disease, or accident of any kind?

We are satisfied that such cases are within the meaning that the legislature gave to the term "suffering condition," and indeed all cases where beasts are found astray under circumstances that render it reasonably certain that they will suffer injury unless rescued by the finder; together with those cases where there is reasonable ground to apprehend that they are, or will become, wholly lost to the owner, unless taken up by the finder, as well as those cases where they are in fact enduring pain, arising from want, disease, or accident of some kind, and need relief for the owner's benefit. Such cases we hold to be within the meaning of the phrase "suffering condition," although it might be said that the legislature were unfortunate in the selection of language to convey the meaning they desired to express.

The remaining question to be considered is in relation to the charge of the court. The motion for a new trial shows that on the trial of the case in the court below, it was not claimed by the defendant, that there existed any necessity for their applying the provisions of the statute to the case, further than this, that the cattle when found had been for a considerable time running at large, without the apparent care or control of any owner, and were in low condition in regard to flesh; and they requested the court to charge the jury, as a matter of law, that these facts were sufficient to bring the case within the meaning of the term "suffering condition."

Now the fact that the cattle had been for a considerable time running at large, without the apparent care or control of any owner, only tended to show that the cattle when found were astray; and the mere fact, that at that time they were in a low condition of flesh, was far from being sufficient to show that they were in a suffering condition. They might have been increasing in flesh during all the time they had been astray, and still be found in a low condition of flesh. It would be necessary to know in what condition of flesh they left the owner, before this evidence could be of any avail upon the question then at issue. We think there-

fore, that the court committed no error in omitting to charge the jury as requested by the defendants.

But it is said that the charge given by the court was not correct. We have seen that the only claim made by the defendants upon the trial, was, that the cattle when found were suffering from the want of food, and in reference to that claim, and that only, can the charge of the court be considered. No matter whether as an abstract legal proposition the charge was right or wrong, for the court was not bound to go farther than the exigencies of the case required; and so far the court went, and, for aught that we can discover, went correctly. The only exception that can possibly be taken to the charge as applied to the case, must be confined to the word " own " in the last clause—" its own sake," instead of its owner's sake. The substitution of one word would have rendered the charge unexceptionable. But it is easy to see, that if an animal is suffering from the want of food to that degree that it needs relief for its own sake, it must need relief for its owner's sake. The interest of the owner in such a case is inseparably connected with the welfare of his animal; and we think, therefore, that the defendant has no substantial cause to complain.

For these reasons we do not advise a new trial.

In this opinion the other judges concurred; except Sanford, J., who having tried the case in the court below, did not sit.

New trial not advised.