## · THE CITY OF HARTFORD vs. THE HARTFORD STREET RAILWAY COMPANY.

First Judicial District, Hartford, January Term, 1903.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

Chapter 169 of the Public Acts of 1893 (General Statutes, Rev. 1902, § 3837) requires street-railway companies to keep that portion of the highway between their rails, and two feet on either side thereof, in repair, to the satisfaction of the local municipal authorities. The Act also gave to such authorities, for all practical purposes, exclusive and final jurisdiction over the location and construction of the tracks, wires, conductors and fixtures of such companies. In 1895 an Act (Chap. 283) permitted any street-railway company, affected by any denial or order of the local authorities in matters relating to street railways, to appeal to the Superior Court or a judge thereof. In 1901 a radical departure was made by a statute (Rev. 1902, § 3832) which conferred upon the railroad commissioners exclusive jurisdiction of most of the matters which had been confided to the local authorities by the Act of 1893, and, in lieu of the appeal to the Superior Court, gave the street-railway companies the right to appeal from any decision, denial, or order of the local authorities, to the railroad commissioners. *Held :* —

1. That the power to order and compel street-railway companies to repair their part of the highway, conferred by the Act of 1893 upon the local municipal authorities, was not repealed by the Act of 1901.
2. That the street-railway company had the right, under the Act of 1901, to appeal from the city's denial of its application to replace the asphalt pavement between its tracks with a different pavement ; and that the railroad commissioners, upon such appeal, did not sit as a judicial body, to determine whether the city had acted unlawfully or unreasonably, but as an administrative tribunal to retry *de novo* the subject-matter of the appeal, with power to alter or modify the order or denial appealed from.

Argued January 7th–decided January 30th, 1903.

ACTION in the nature of an appeal from the order of the railroad commissioners in allowing the defendant to lay a creo-resinate wood pavement between its tracks for a limited distance on Main Street in the city of Hartford, brought to the Superior Court in Hartford County where the defendant's demurrer to a portion of the complaint and its motion to dis-

miss were sustained by the court, *Ralph Wheeler*, *J.*, from which rulings the plaintiff appealed. *No error.*

The case is sufficiently stated in the opinion.

*Joseph P. Tuttle*, for the appellant (plaintiff).

*E. Henry Hyde*, with whom was *George H. Gilman*, for the appellee (defendant).

TORRANCE, C. J. In March, 1902, the Hartford Street Railway Company applied to the authorities of the city of Hartford for permission to replace, with creo-resinate wood pavement, the street asphalt pavement between and outside of its rails on Main Street in said city, between certain described points. The city authorities refused to grant such permission. From this action the railway company took an appeal to the board of railroad commissioners.

Before that board the city authorities appeared and moved to dismiss said appeal, mainly upon the ground that the action of the city authorities in denying the application to lay the proposed pavement was final, and not subject to review by the commissioners, by way of appeal or otherwise. That board denied the motion to dismiss, and, after due hearing and in view of the evidence before it, "permitted and directed" the railway company " to lay a creo-resinate wood pavement between its rails and two feet outside of " the same, between two described points, " in order that its practicability and efficiency may be thoroughly tested." In all other respects the action of the city authorities in denying the application of the railway company was confirmed.

From this action of the commissioners the city authorities took an appeal to the Superior Court. To this appeal the railway company was made a party, and it filed a motion to dismiss the appeal "so far forth as it involves matters other than the question as to the jurisdiction " of the commissioners, because all matters involved in it other than said question of jurisdiction were of " an administrative or legislative character, and are not judicial matters ; and because it is not al-

leged and does not appear that the board of railroad commissioners, in making the order appealed from and in modifying the denial and order of the mayor and court of common council of said city of Hartford, as is alleged in this appeal, acted illegally, unlawfully, or unreasonably, or in any way exceeded its powers in the premises."

The street-railway company also demurred to the appeal, in so far forth as it is based upon the ground that the board of railroad commissioners did not have jurisdiction to entertain the appeal of the street-railway company, and in so far forth as the appeal is based on the ground that said commissioners erred in not granting the motion of the city to dismiss said appeal of the street-railway company, " because the statutes of this State conferred upon said board of railroad commissioners jurisdiction of said appeal, and power to make the order from which the city of Hartford and the mayor and court of common council of the city of Hartford now appeals."

The only questions which have been presented for our consideration are those raised by the demurrer, which was sustained by the Superior Court. Although, therefore, the judgment appealed from recites that the motion to dismiss was granted, we do not examine the propriety of that ruling.

The city claims (1) that the commissioners had no jurisdiction whatever of the appeal taken to them by the street-railway company; and that (2) if they had, it was a jurisdiction limited to determining whether the municipal authorities had in their refusal acted unlawfully and unreasonably. The answer to both of these claims depends upon the construction of certain provisions of Chap. 156 of the Public Acts of 1901; Rev. 1902, § 3832.

In 1893 the legislature provided, with certain limitations, that every street-railway company, occupying with its tracks a public highway, should " keep so much of the . . . highway as is included within its tracks, and a space of two feet on the outer side of the outer rails thereof in repair, to the satisfaction of the authorities " of the municipality bound by law to maintain said highway. Public Acts of 1893, Chap. 169, § 6; General Statutes, Rev. 1902, § 3837. The Act also gave

to the municipal authorities power to make and enforce orders upon the railway company with respect to such repairs; but it gave no right of appeal from such orders, and, on the contrary, it expressly denied such right of appeal. That Act also, in the third section (Rev. 1902, § 3824) gave to the municipal authorities within their respective jurisdictions the "exclusive direction over the placing, or locating of any tracks, wires, conductors, fixtures, structures of any such railway permanently located in the streets or highways, including the re-locating or removal of the same, or changes in the grade thereof;" and for the purposes "of any public improvement and including the power of designating the material, quality, and finish thereof, may make all orders necessary to the exercise of such power of direction and control, which orders shall be in writing, and recorded in the minutes and records of their respective municipalities." The Act gave no right of appeal from any original orders of the kind above described. Under the second section (Rev. 1902, § 3823) of the Act, also, the municipal authorities had the power to adopt or to modify the "plan" which the railway company was obliged to submit to them before constructing the railway or laying additional tracks, or making a change in its motive power; and no right of appeal was given from the action of the local authorities in respect to the plan, except in a very limited way. For all practical purposes the power of the local authorities as to all these matters was exclusive and final.

In 1895, however, it was enacted that whenever the local authorities "shall make, pass, or render any decision, denial, order, or direction with respect to any matters relating to street railways which, by virtue of any public or private act or resolution, now are, or may hereafter be, within the respective jurisdictions" of such authorities, "any street railway company affected thereby may appeal from any such decision, denial, direction, or order . . . to the Superior Court, or any judge thereof." Public Acts of 1895, Chap. 283.

This Act, in the broadest terms, gave a right of appeal from any and all orders of any kind or nature which the local authorities had the power to make and enforce against the

street railways in the occupancy of highways and streets; and of course included the right to appeal from orders relating to the repair of the highways or streets by the railway company. This Act, however, in so far as it was a valid Act, was held by this court to give a very limited right of appeal in such cases. *Norwalk Street Ry. Co.'s Appeal*, 69 Conn. 576.

Thus stood the law with respect to this matter when the Act of 1901 was passed. That Act, in certain respects, was a somewhat radical departure from the legislation embodied in the Acts of 1893 and 1895, above referred to. By it, most of the matters which by the Act of 1893 were confided to the exclusive jurisdiction of the municipal authorities, were confided to the exclusive jurisdiction of the railroad commissioners. It further provided (Rev. 1902, § 3832) that whenever the local authorities " shall make or render any decision, denial, order, or direction, with respect to the location of the tracks of any street railway company in any highway with reference to the center line of such highway and the grade thereof, and any change proposed to be made in such highway or grade thereof, or whenever any of said municipal authorities shall make or render any decision, denial, order, or direction with respect to any other matter relating to street railways, any street railway company affected thereby may appeal from any such decision, denial, direction, or order . . . to the railroad commissioners." The right of appeal thus given is to the railroad commissioners, instead of to the Superior Court or to a judge thereof, as by the Act of 1895. The Act of 1901 in terms repeals the Act of 1895 above referred to, but it does not in terms repeal the Act of 1893. It does, however, repeal all other Acts and parts of Acts inconsistent with its provisions.

Under the legislation embodied in the Acts of 1893 and 1901 above referred to, we think it is clear: (1) that the power given by the former of these Acts to the municipal authorities, to order the street-railway company to repair its part of the highway, was not taken away by the latter of these Acts; and (2) that the Act of 1901 gives to the street-

railway company the right to appeal from any such order to the railroad commissioners. Both parties to this proceeding properly concede the first of these propositions, and the dispute between them relates mainly to the last; but, as above stated, we think the language of the Act of 1901 is too broad and comprehensive to admit of doubt that such right of appeal exists.

We further think that upon such an appeal the railroad commissioners try the matters brought before them by the appeal *de novo*, and that they do not sit to determine whether the municipal authorities in what they did acted unlawfully or unreasonably. The commissioners, while as an administrative board peculiarly well fitted to determine the questions that may be brought before them under the legislation in question, are not a court clothed with judicial power.

We hold that the railroad commissioners, under the legislation in question, had the power to entertain the appeal taken to them by the street-railway company from the action of the city authorities, and to make the order of which the city complains.

There is no error.

In this opinion the other judges concurred.