CHARLES A. ROOT *vs.* THE CONNECTICUT COMPANY
ET AL.

Third Judicial District, Bridgeport, October Term, 1919.
PRENTICE, C. J., WHEELER, BEACH, GAGER and CASE, Js.

A street railway company is liable at common law, like any individual or private corporation, for an injury caused by its neglect to observe reasonable care in the maintenance of its railway structure; but the obligation imposed upon it by the statute (§ 3831), to repair the highway between its rails and two feet outside thereof, and its liability for neglect to one injured (§ 1414), rest upon other considerations which partake of a public or governmental nature.
It may happen that the act which constitutes negligence at common

Root *v.* Connecticut Co.

law is also a breach of the statutory duty to repair the highway, and where this is so, or is asserted, the injured person may pursue either or both remedies in the same complaint and in a single count.

In the present case it did not appear from the finding that the defective instrumentality was a part of the railway structure, or that the street railway company had voluntarily assumed its maintenance as such. *Held* that under these circumstances the plaintiff could not recover upon his common-law action.

A repeal of a statute by implication occurs only where the two statutes are so repugnant to one another as to indicate that the later Act was intended as a substitute for the former.

This statutory duty to repair a prescribed portion of the highway, and its accompanying liability, which have rested upon street railway companies for more than fifty years, are not repealed by implication by the recent legislation (General Statutes, §§ 1486, 1498, 1515) under which the State has assumed a larger part in the construction and repair of highways, together with liability to one injured through the neglect or default of its employees.

The purpose of this legislation, so far as trunk line highways are concerned, was not to change the long-established policy of the State in its treatment of street railway companies, but to relieve the towns from the burden of maintaining roads of an interstate character which enured mainly to the benefit of the public of this and of other States.

The substitution of the highway commissioner for the town, in matters relating to these highways, cannot by itself be held to repeal the duty of the street railway company to repair this limited portion of the highway.

General Statutes, § 1515, reserves to the State a right of action against the contractor "or other person," through whose neglect or default the injury occurred, to recover the amount paid by the State under this section on account of such injury. *Held* that the expression "other person" was intended to, and did, include street railway companies.

General Statutes, § 3719, relating to the repair by "railroad companies" of structures over or under their tracks, applies only to steam railroads.

Argued October 30th—decided December 22d, 1919.

ACTION to recover damages for personal injuries alleged to have been caused by the negligence of the defendants, brought to the Superior Court in New Haven County and reserved by that court, *Case, J.,* upon an agreed statement of facts, for the advice of this

court.  *Judgment advised for plaintiff against each of the defendants.*

One of the highways of the trunk line system passing from Wallingford to New Haven and constructed by the highway commissioner at a point about a mile north of North Haven, was crossed by a single track line of the defendant street railway.  At the point of crossing, the rails were substantially at grade, crossing the highway diagonally and within the highway lines for about one hundred feet.

The surface of the highway was a bitulithic macadam pavement, except that on each side of the rails and within the highway lines was a row of planks twelve inches wide imbedded in the macadam pavement.

The planks on the outside of the rails were substantially flush with the top of the rail and with the surface of the macadam, while on the inside of the rails the planks were two or three inches from the rail and from two to three inches below the top of the rail, but flush with the macadam surface between the rails.

The planks made a more durable and better pavement to adjoin the rails than macadam.

The highway surface between the rails and two feet outside the rails, which included these rows of planks, was constructed by the defendant Company according to plans of the highway commissioner at the time this highway was constructed, and in the belief that the highway commissioner had authority to require it to construct this portion of the highway.

On June 23d, 1918, one of the outside planks on the northerly side of the northerly rail and in the westerly side of the highway had become rotted and worn, so that there was a hole therein eighteen inches long shelving to the middle of the plank from both sides, leaving a portion of the rail which adjoined the hole exposed, and the hole was substantially three inches deep.

Root *v.* Connecticut Co.

During the night of this day two automobiles collided at or near this depression, causing injuries to plaintiff.

For the purpose of this reservation the defendants agree that the proximate cause of plaintiff's injuries was the hole in the planking, and that the planking was not maintained in proper repair or in a reasonably safe condition for public travel thereon, and by reason thereof the course of one of the automobiles was deflected by its front wheel striking the hole and turning it into the automobile in which the plaintiff was riding as the two automobiles were about to pass one another, and the collision resulted in injuries to the plaintiff.

The defendant Company did not lay out or construct, and does not maintain or operate, a railroad operated by steam power.

If the plaintiff is entitled to recover, judgment is to be rendered in his favor for $2,250.

*Lawrence L. Lewis* and *Charles E. Hart, Jr.,* for the plaintiff.

*William E. Egan,* with whom, on the brief, was *Frank E. Healy,* Attorney-General, for the defendant Highway Commissioner.

*Harrison Hewitt* and *Harrison T. Sheldon,* for the defendant the Connecticut Company.

WHEELER, J. This action was originally brought against the defendant railway company and came to this court upon a reservation, and thereupon was remanded to the Superior Court with instruction to cause the highway commissioner to be brought in as a party defendant. This was done, and the case is now before us upon a reservation, upon an agreed statement of facts, together with a statement of the claims of law made by the respective parties.

The primary question before us is whether the plaintiff is entitled to recover against either or both of these defendants.

The place of injury was upon a trunk line highway, and the cause a defect therein. The duty of keeping such highway in repair was by Chapter 267 of the Public Acts of 1911 (General Statutes, §§ 1486, 1498), placed upon the State, and so continued at the time of this accident. By Chapter 307 of the Public Acts of 1915 (General Statutes, § 1515), the person injured through the neglect of the State to keep such highway in repair, is given a right of action for damages against the highway commissioner, and upon paying the judgment the State is subrogated to the rights of the injured person to recover from the contractor or other person, through whose neglect the injury has occurred, an amount equal to the judgment it has paid. Hence it was the duty of the State, through the highway commissioner, to have repaired the defective planking, and because of its failure so to do the plaintiff suffered his injuries. The express terms of the statute make the highway commissioner liable for these injuries, which have occurred through his neglect to keep the highway in repair, and give the State its right of action, upon the judgment paid, against the person whose neglect caused the accident.

Two causes of action were set up in the single count of the substituted complaint against the defendant railway: a liability to the plaintiff for injuries resulting from the defective condition of the planking through violation of its statutory duty, and through violation of its common-law duty to exercise reasonable care to keep this planking in good condition for public travel. The statutory liability "rests upon the failure to perform a governmental duty" which the General Assembly has cast upon the defendant railway. The common-

law liability rests upon a different foundation—upon the failure to exercise ordinary care in the conduct of its affairs. The plaintiff had an election which remedy to pursue; *Coburn* v. *Connecticut Co.*, 84 Conn. 654, 657, 81 Atl. 241; or he could do, as he has done, pursue each remedy under the same complaint and in a single count.

The substituted complaint and the agreed statement of facts differ. The complaint sets up that the planking was installed by the defendant as a part of its highway-crossing, and that it was the duty of the railway company to maintain the planking in good condition for public travel. The agreed statement of facts omits these allegations, and merely recites that the planking was constructed by the railway company in the belief that it was required to do this. This, with the facts showing the defective condition of the planking at the time of the collision, are substantially all of the pertinent facts agreed to from which the negligence of the railway company is claimed under the common law. If the agreed statement of facts had set forth facts which showed that the planking was a part of the railway, out of which the duty of maintenance would arise, or contained a general allegation of the duty of maintenance, in connection with the other facts alleged, a good common-law action for negligence would have been stated. Or if, in addition to the allegation that the railway had constructed this planking in the belief that it was required to do it, it also appeared that the railway had maintained the planking either under a similar mistaken belief, or had voluntarily assumed the duty of maintenance in connection with the other facts, a good common-law action for negligence would have been stated. The agreed statement of facts does neither; and for the reasons given it does not state a common-law action of negligence for the maintenance of the defective planking.

Unless made so by statute, the railway company is not liable to the plaintiff.

The plaintiff's cause of action matured prior to July 1st, 1918, and the statutory references herein thus antedate the Revision of 1918.

The plaintiff's main reliance is upon two statutes.

General Statutes (Rev. 1902) § 3837, provides that "every such company [street railway company] shall keep so much of the highway as is included within its tracks, and a space of two feet on the outer side of the outer rails thereof in repair, to the satisfaction of the authorities of the city, town or borough, which is bound by law to maintain such highway"; and Chapter 66 of the Public Acts of 1917 (General Statutes, § 1414) prescribes that "any person injured in person or property by means of a defective road or bridge may recover damages from the party bound to keep it in repair."

Counsel for the railway company places its argument under two main propositions: (1) that the railway company owes no duty to keep any portion of the highway in repair; and (2) that it is not liable in damages for an injury caused by a defect in the surface of a trunk line highway. We will take up, in this order, the principal features of the argument in support of these claims.

Section 3837 of the General Statutes of 1902 (Rev. 1918, § 3831), it is said, refers exclusively to municipal highways and not to trunk line highways, while the enactment of the trunk-line highway legislation has, it is contended, placed this kind of highway in a class by itself and not subject to the provisions of § 3837 (Rev. 1918, § 3831) and Chapter 66 of the Public Acts of 1917 (Rev. 1918, § 1414). And further that § 3837 requires the railway company to repair this portion of the highway to the satisfaction of the municipal authorities, and provides for the kind of pavement they may require and for the keeping of a record of all orders for repairs to

be made by the railway company, while on the trunk line highway only the highway commissioner can make such repairs. And the conclusion drawn is, that when the word "highway" is used in this section (§ 3837) it refers to municipal and not to trunk line highways.

To the second point the argument is that the action is brought upon the remedy given by Chapter 66 of the Public Acts of 1917 (General Statutes, § 1414), which does not refer to injuries from defects in trunk line highways, for which an exclusive remedy was given by Chapter 307 of the Public Acts of 1915 (General Statutes, § 1515); that the remedy is given against the party bound to repair, and that the only party responsible for the repair of a trunk line highway is the State. "The entire cost of repairs to trunk line highways shall be paid by the State." Public Acts of 1911, Chap. 267, § 1 (Rev. 1918, § 1498). Furthermore, the railway company contends, that the provision in § 3719, casting upon a railroad company the duty of maintaining all structures over or under its tracks at any highway crossing, refers to a steam railroad, not to a street railway.

We cannot but think this argument more plausible than sound. Section 3837 of the Revision of 1902 (General Statutes, § 3831) imposed upon the street railway company the duty to repair the highway between its tracks and two feet outside the rails. This duty was cast upon every street railway and in terms it applied to every highway, not only the then known kind but the kind that time might disclose. General Statutes (1902) § 2020, as amended by Public Acts of 1917, Chapter 66 (Rev. 1918, § 1414), gives to any person injured by a defective road, a right of action in damages against the party "bound to keep it in repair." In neither statute is there a limitation as to the kind of road or highway to which the statutory obligation refers; and this duty and remedy must still exist, unless there has been a re-

peal of these statutes so far as trunk line highways are concerned. No claim of an express repeal of these statutory provisions is made, and therefore a repeal by implication must be found if the railway company's position is to be sustained. This must appear plainly and definitely. The statute or statutes from which the repeal by implication arises, must be so repugnant to each other as to indicate that the latter statute was intended as a substitute for the former, before a repeal by implication can be found. *Fair Haven & W. R. Co.* v. *New Haven,* 75 Conn. 442, 446, 53 Atl. 960. The statutes from which the repeal by implication must be found, if at all, are Public Acts of 1911, Chapter 267, § 1, *supra* (General Statutes, §§ 1486, 1498), and Public Acts of 1915, Chapter 307 (General Statutes, § 1515): "Any person injured in person or property through the neglect or default of the State or any of its employees by means of a defective road or bridge which it is the duty of the state highway commissioner to keep in repair, . . . may bring a civil action to recover damages sustained thereby against the highway commissioner. . . . "

As we read these statutes there is no necessary repugnance between the later and earlier statutes. The intention was to have these statutes stand together. The statutory policy of having street railway companies repair that portion of the highway occupied by them, having been long established, the provisions of the latter statute imposing all the burden of repair of a certain kind of highways upon the State, should be construed to relieve the towns of the burden of repair but should not be construed to repeal § 3837 (Rev. 1918, § 3831), since there is no necessary repugnance between these statutes, and it will not be presumed that the General Assembly intended to depart from this policy in the absence of clear and certain implication.

In the history of this legislation will be found per-

suasive argument against a repeal by implication of the earlier statutes. A detailed discussion of these and related statutes would be protracted and of little public service, and for this reason we refer to a part only of the history, and that briefly. From an early day the town was charged with the duty of repair of all highways, and the earlier improved-roads statutes placed the duty of repair of improved roads upon the town. In the Good Roads Act (Public Acts of 1907, Chap. 264, § 3; General Statutes, § 1486), the duty of repair in the case of highways constructed under that Act, or previously constructed with State aid, was committed to the highway commissioner, and the towns were required to reimburse the State for one quarter of the cost. In the amendment to the Good Roads Act (Public Acts of 1909, Chap. 135; General Statutes, § 1486), the repair of State-aided highways was placed on the State, and one fourth their cost was to be reimbursed the State by the towns through which they passed. Chapter 267 of the Public Acts of 1911 (General Statutes, §§ 1486, 1498) substantially re-enacted the Act of 1909, and further provided that the entire cost of repairs to trunk line highways should be paid by the State. The reason was the larger purposes served by these roads, intertown, inter-urban and inter-State as well, and the unfairness of making a locality pay for a benefit to the public of the entire State or of a number of States. One accomplishment of the trunk-line legislation was the substitution of the highway commissioner in place of the town, and since the town had been under the duty of making these repairs, it was necessary to specify clearly that the entire cost of the repairs to trunk line highways should be paid by the State. The clause accomplishing this appears in the middle of § 1 of this Act (Public Acts of 1911, Chap. 267) the section being devoted to State-aided roads, to the cost of which the town con-

tributed, so that in order to make it clear that this did not refer to trunk line highways, it was expressly declared that the entire cost of repairs was to be paid by the State. There was no thought of affecting § 3837 (Rev. 1918, § 3831), and so there was no need of amending it. Its burden upon the railway companies continued as before.

In the Public Acts of 1863, Chapter 31, the obligation to keep in repair the highway two feet outside the rails of a horse railroad, is first found, and also an action for neglect to repair given the person injured thereby.

This obligation and remedy were carried on to the electric railway, the successor of the horse railroad, somewhat broadened, but in its essence the same, down to the time of the enactment of the trunk-line legislation.

It has been the settled and long-time policy of our State to require street railway companies to keep in repair this space within and adjoining the rails of their track. The reason for this legislation no doubt arose out of the knowledge that a part of the railway's structures extended beyond its rails, and its occupancy of the highway, through the overhang of its cars, extended somewhat beyond its rails, and that the repair of the highway immediately adjoining the rails was more burdensome because of the presence of the railway in the highway. It is quite unlikely that the General Assembly intended to change this established policy, and if it had so intended it is exceedingly unlikely that it would have left to the implication of the statute a change of so radical a nature. And it is even more unlikely that a change of policy would have been made as to trunk line highways, while all other highways were left still under the ancient policy. The relief of street railways of this obligation to repair when operating across, upon, or beside a trunk line highway, would impose a very con-

siderable burden upon the State and one which it would
not have assumed without adequate reason. So far as
we can see no good reason exists, certainly none has
been suggested by counsel, for the assumption by the
State of this very considerable burden and for the aban-
donment of a policy existing toward street railways from
their inception.

While the State assumed the duty of repair of State-
aided roads in large part as early as 1907, no attempt
has been made on this ground to secure judicial relief to
the street railways from the duty of keeping in repair a
portion of the highway as required by § 3837 (Rev. 1918,
§ 3831). Aside from the present case only one other
instance has been found, and that in January, 1919,
where a street railway has sought to avoid the obliga-
tion of § 3837 (Rev. 1918, § 3831) since the trunk-line
legislation as to railways on trunk line highways; and
this is significant of the general interpretation of these
statutes.

Various Acts have been passed relieving the town of
various forms of liability, but none of these have re-
lieved the street railway. Throughout all the trunk-line
legislation, the intention to preserve the liability of the
street railway for repairs and maintenance of the part of
the highway occupied by it, clearly appears. The State
was required to assume the duty formerly resting on
the towns by express terms; we do not think it has been
required by implication to assume the duty that had
rested on street railways for over fifty years. The trunk-
line legislation transferred to the highway commissioner
the control over street railways in highways which
formerly belonged to the town, but it did not relieve the
railway of its duty of repair of the highway within
which it operated. The substitution of the highway
commissioner for the town, in matters relating to these
highways, cannot by itself be held to repeal the obliga-

tion of the railway to repair this portion of the highway. *Hartford* v. *Hartford Street Ry. Co.*, 75 Conn. 471, 475, 53 Atl. 1010.

We agree with the defendant railway that General Statutes, § 3719, is not applicable to a street railway, and what it says of the duty of the railroad companies must be held to refer to the steam railroad companies, and we therefore hold that the plaintiff cannot support his action under this statute. This seems so clear from the history of the Act and its content and context, that we merely state our view.

Chapter 307 of the Public Acts of 1915 (General Statutes, § 1515), gives a right of action against the highway commissioner "for injuries sustained on State highways," and reserves to the State, which has been obliged to pay a judgment rendered for such injuries, a right of action over against the contractor "or other person, through whose neglect or default any such injury may have occurred," to recover an amount equal to the judgment so paid. The term "other person" was, as we think, intended to include street railway companies; and the State may, under this section, recover what it may have paid for injuries through defects within the two-foot space. The reservation of this right shows that the railway company has not been relieved of its duty to make these repairs under § 3837 (Rev. 1918, § 3831).

The Superior Court is instructed to render judgment against each of the defendants for $2,250.

No costs will be taxed in this court in favor of either party.

In this opinion the other judges concurred.