THE TOWN OF OLD SAYBROOK *vs.* THE PUBLIC UTILITIES COMMISSION ET ALS.

First Judicial District, Hartford, January Term, 1924.
WHEELER, C. J., BEACH, CURTIS, KEELER and MALTBIE, Js.

An Act which seeks to give the Highway Commissioner power to initiate proceedings for the elimination of conditions dangerous to the safety of travelers on our main highways, ought to receive the most favorable consideration, to the end that its provisions may be applied as broadly as intended by the legislature.

Chapter 223 of the Public Acts of 1915 (General Statutes, §§ 1503—1508) was intended by the General Assembly to have a broad application, and the specification in the Act of certain changes which may be necessary to protect the traveling public are not to be taken as the true measure of that intent, but, in so far as they may seem to narrow the scope of the law, are to be regarded as inconsistent with the real and manifest purpose of the statute.

Upon a petition of the Highway Commissioner, under the Act of 1915, for the elimination of a dangerous railway grade-crossing on a trunk-line highway, the Public Utilities Commission may lawfully assess an equitable portion of the cost of such elimination, if the same be ordered, upon the municipality in which such dangerous condition exists.

The various methods provided by statute for the removal of grade-crossings prior to the Act of 1915, did not authorize the initiation of proceedings by the Highway Commissioner, and that Act merely adds another method or process to those theretofore existing, without in any way disparaging any of them.

General Statutes, § 3712, concerning the removal of grade-crossings, applies only to cases in which the Public Utilities Commission de-

Old Saybrook *v.* Public Utilities Commission.

sires to proceed of its own motion,—not to those in which it is obliged to act upon petition filed by the Highway Commissioner.

The intention of the legislature, which is the fundamental rule for the construction of statutes, must be ascertained from the language of the Act if that be plain; but if otherwise, its true meaning may be gathered by considering the Act in the light of all its provisions, the object to be accomplished by its passage, its title, pre-existing legislation on the same subject, and other relevant circumstances.

Unless the terms of an Act clearly indicate a legislative intent to have it apply to proceedings pending at the time of its passage, it will not be given such effect.

Argued January 2d—decided March 1st, 1924.

APPEAL by the plaintiff from an order of the Public Utilities Commission assessing a portion ($10,000) of the cost of eliminating several railroad grade-crossings on highway trunk lines in the plaintiff town—whose removal was sought by the Highway Commissioner,—brought to and reserved by the Superior Court in Middlesex County, *Haines, J.,* for the advice of this court. *Judgment advised sustaining the order of the Commission.*

*Ralph O. Wells,* for the appellant (plaintiff).

*Norman S. Buckingham,* for the appellee (defendant New York, New Haven and Hartford Railroad Company).

*William E. Egan,* with whom, on the brief, was *Frank E. Healy,* Attorney General, for the appellees (defendants Public Utilities Commission and the State Highway Commissioner).

MALTBIE, J. On March 19th, 1923, the Highway Commissioner filed a petition with the Public Utilities Commission under Chapter 223 of the Public Acts of 1915 (§§ 1503 to 1508 of the General Statutes), asking

authority to eliminate certain dangerous conditions existing in the appellant town by reason of grade-crossings of trunk-line highways over the tracks of the New York, New Haven and Hartford Railroad Company. Pursuant to an order of notice issued by the Commission, the parties appeared before it on April 12th, 1923, and the Commission then orally found and decreed that the safety of public travel along the highways required changes to be made at the crossings, but it disapproved the plans submitted by the Highway Commissioner. The matter was continued until May 3d, 1923, and at that time the Commission approved plans for the changes. These involved the elimination of two grade-crossings of trunk-line highways by diverting the highways so that they intersected a third trunk-line highway before they reached the railroad tracks, and of two grade-crossings, one of a trunk-line highway and one of a town highway, by removing a section of railroad track which formerly crossed them, and the construction of a bridge over the railroad tracks upon which was to be carried the trunk-line highway which still crossed them. The matter was again continued by the Commission until May 31st, 1923, when the estimated cost of the changes was apportioned: $10,000 to be paid by the appellant town, and the balance, $158,000, to be equally divided between the State and the railroad company. The law under which the Commission acted, in so far as it is pertinent to the issues on the appeal, is stated in the footnote, and the question propounded for the

Sec. 1503. PETITION FOR ELIMINATION OF DANGEROUS RAILWAY CROSSING ON TRUNK LINE HIGHWAY. When any dangerous condition exists at a crossing of any of the tracks of any public service corporation over, under or upon any trunk line highway, and such company, municipality wherein such dangerous condition is located, and the highway commissioner fail to agree concerning the elimination thereof, the highway commissioner may petition the Public Utilities Commission for authority

advice of this court is: Did the Commission have legal authority to apportion any part of the cost of the elimination of these grade-crossings against the appellant town?

Two questions, preliminary to a consideration of the applicability of the specific provisions of the statute in question to the situation before us, are presented in the record. The first of these arises out of the fact that the legislature of 1923 amended the statute in certain particulars by Chapter 219 of the Public Acts of 1923, which provided that it should take effect from its passage, and which, as it was approved by the Governor on May 29th, 1923, did take effect on that day. *Gumpper* v. *Waterbury Traction Co.*, 68 Conn. 424, 426, 36 Atl. 806. As the terms of that Act are not such as clearly to show a legislative intent to have it apply to pending proceedings, we may, however, at

to eliminate such condition and said commission shall give notice to such company and to the municipality wherein such dangerous condition exists of a time when and place where a hearing may be had on the necessity of making changes in the location or grade of the tracks, or of any structure or device upon, over or adjacent to such highway, or the relocation of such trunk line highway. The highway commissioner shall file with the Public Utilities Commission, at least five days prior to the date of such hearing, plans and specifications and an estimate of the cost of removing such dangerous conditions, including the cost of all labor, material, engineering services, and any land or interest in land that may be necessary.

Sec. 1504. ELIMINATION OF DANGEROUS PLACE MAY BE ORDERED. If the Public Utilities Commission shall find that the safety of public travel along such highway requires a change in the location of any abutments, structure, device, tracks, or change of grade of tracks of such company, it shall issue such order to the highway commissioner concerning the removal or change in the location thereof as may be necessary to eliminate such dangerous condition, and shall apportion the cost thereof equitably among the company or companies, the municipality wherein such dangerous condition exists, and the state.

Sec. 1508. PRECEDING SECTIONS NOT TO AFFECT REMOVAL OF GRADE CROSSINGS. The provisions of sections 1503 to 1507 inclusive shall not be construed to affect or conflict with the provisions of law concerning the removal of grade crossings.

once dismiss it from consideration. General Statutes, § 6721; *Neilson* v. *Perkins*, 86 Conn. 425, 85 Atl. 686; *Hartford* v. *Poindexter*, 84 Conn. 121, 79 Atl. 79; *Gumpper* v. *Waterbury Traction Co.*, *supra*, p. 427. The other question arises out of the provisions of § 1508, which was the concluding section of the Act of 1915. This states that the preceding sections of the Act of 1915 "shall not be construed to affect or conflict with the provisions of law concerning the removal of grade crossings." The changes now under consideration do involve the removal of grade-crossings which might in certain circumstances come within the purview of other statutes dealing with such situations. An examination of the statute book discloses, however, that we have several varying procedures directed to that end. Thus, under § 3710, the directors of a railroad or the officers of a municipality may petition the Public Utilities Commission for the removal of a grade-crossing, and the Commission, upon ordering it, may apportion the cost, the method varying according to the party making the application; under § 3711, a railroad company is permitted to petition the Commission where it desires to abolish a grade-crossing by shifting the line of its road; under § 3712, the Commission may, upon its own initiative, institute proceedings for the removal of a crossing, and a new element in the apportionment of the cost is introduced by a provision that one fourth of it shall be paid by the State; and, finally, under §§ 3858 and 3859, where the tracks of a street railway are laid in the highway, it may itself petition for abolition of a grade-crossing or, in the event that others petition under any of the foregoing provisions, its presence may bring about an apportionment of the cost on still a different basis. Under none of these statutes can the Highway Commissioner, who has come so largely to represent the traveling public of the State,

bring a petition, and, in so far as the law we are considering is concerned with the removal of grade-crossings, it but adds one more process for accomplishing that end to those already in existence. Just as the other provisions may stand side by side, no one affecting or conflicting with the others, so this one may be added without in any way derogating from any of them.

In attempting to determine the applicability of the provisions of law in question to the situation before us, one must necessarily bear in mind its highly remedial character. Grade-crossings, always dangerous, in these days when our highways are called upon to carry an almost unceasing stream of rapidly moving vehicles, have increasingly become a "deadly menace to public safety." *Middletown* v. *New York, N. H. & H. R. Co.*, 62 Conn. 492, 497, 27 Atl. 119. The change in the nature of that traffic from a matter of local convenience and necessity to one of State, national and even international use, has more and more placed the burden of the care of the traveling public upon State rather than municipal officials. *Root* v. *Connecticut Co.*, 94 Conn. 227, 236, 108 Atl. 506. A law which seeks to give the Highway Commissioner power to initiate proceedings for the elimination of conditions dangerous to the safety of the travelers upon our main highways ought to have the most favorable consideration. *Clark* v. *Hoskins,* 6 Conn. 106, 110; *Richmondville Mfg. Co.* v. *Prall,* 9 Conn. 487, 495; *Richards* v. *Eno,* 23 Conn. 413, 416; *Sturges* v. *Raymond,* 27 Conn. 473, 476. We may not, of course, attempt to give effect to an actual intent of the legislature beyond that intent which is to be found in the words of the law (*Lee Bros. Furniture Co.* v. *Cram,* 63 Conn. 433, 438, 28 Atl. 540; *Bayon* v. *Beckley,* 89 Conn. 154, 159, 93 Atl. 139), but in considering such a law as the one before us, we ought

not "to stick in the bark" and by too close adherence to its letter narrow its scope beyond the visible intent of the legislature. *Judson* v. *Blanchard,* 4 Conn. 557, 565; *Wolcott* v. *Pond,* 19 Conn. 597, 604; *Brown's Appeal,* 72 Conn. 148, 150, 44 Atl. 22. "The fundamental rule for the construction of statutes is to ascertain the intent of the legislature. This intention must be ascertained from the Act itself, if the language is plain. But when the language used is doubtful in meaning, the true meaning may be ascertained by considering it in the light of all its provisions, the object to be accomplished by its passage, its title, pre-existing legislation upon the same subject, and other relevant circumstances. A statute is to be construed so as to carry out the intent of the legislature, though such construction may seem contrary to the letter of the statute." *Hazzard* v. *Gallucci,* 89 Conn. 196, 198, 93 Atl. 230. Where the provisions of a law are inconsistent, effect must be given to those which harmonize with the context and the apparent intent of the legislature. *O'Flaherty* v. *Bridgeport,* 64 Conn. 159, 165, 29 Atl. 466.

One cannot reasonably read the law in question without seeing in its provisions a legislative intent to give to the Commission broad powers to deal with dangerous conditions existing at the crossing of trunk-line highways and railroad tracks. As enacted in 1915, its title was "An Act concerning the Elimination of Dangerous Conditions on Trunk Line Highways," and the law begins: "When any dangerous condition exists at the crossing of any of the tracks of any public service corporation over, under, or upon any trunk line highway," the Highway Commissioner is to petition for authority to eliminate "such condition." Here is indicated no intent to restrict the law to dangerous conditions brought about by any particular cause, but quite the contrary. Nor in reason

can a distinction be found between a dangerous condition which may be eliminated by carrying a highway upon a bridge over the tracks which it formerly crossed at grade, and one where the change consists merely in altering the situation where a highway already passes beneath the tracks. Nor are we able to find in the statutes governing the removal of grade-crossings, or in those concerning the maintenance of trunk-line highways, any fixed legislative policy to put upon the State the cost of constructing overhead crossings of railroad tracks by such highways; as regards the former, legislation has been in altogether too great a state of flux to make discernible any settled policy, while as to the latter, the statutes already referred to show that the methods of apportioning the cost of such changes have been varied arbitrarily according as one or another interested party makes the initial move. We may start, then, with the establishment by the legislature of a process for the elimination of dangerous conditions where trunk-line highways cross the tracks of public service corporations, which it intended to be broadly applicable.

In considering those terms of the law which point to a narrower scope for the operation of the law, two things call for comment. It is a fair assumption that this general law had its origin in the situation presented by the particular conditions existing at the "Windsor Death Trap," mentioned in § 6 of the Act of 1915; indeed, the references in the law to specific things as to which changes may be necessary are apt to the circumstances there existing. This fact points to the presence of that all too common situation where the scrivener of a law, intended for general application, fails to visualize the varying conditions which may fall within its general scope, and so in his references

to specific conditions restricts the language of the law to those immediately before him or those closely analogous thereto. Again, the difference in phraseology as to the specific matters wherein changes may be necessary between the first and second sections quoted, is noteworthy. Thus the first states that the hearing is to be with reference to the necessity of making changes in "the location or grade of the tracks, or of any structure, or device upon, over, or adjacent to such highway, or the relocation of such trunk line highway"; while the second authorizes action by the Commission upon a finding that public safety requires a change "in the location of any abutments, structure, device, tracks, or change of grade of tracks of such company," making no mention of the "relocation" of the highway. "Relocation" is in itself hardly the apt word to use if by it is meant a change in the route and boundaries of a highway; by ancient custom and everyday usage, we speak of the "layout" and not the "location" of highways; *Wolcott* v. *Pond*, 19 Conn. 597; *Canastota Knife Co.* v. *Newington Tramway Co.*, 69 Conn. 146, 164, 36 Atl. 1107; only at the expense of some forcing of the meaning of the word "relocation," could it be interpreted as intended to refer to a change in grade and structure as well as route and boundary, although this might be a possible construction. *Central Railway & Electric Co.'s Appeal*, 67 Conn. 197, 210, 35 Atl. 32; *Westfield Borough* v. *Tioga County*, 150 Pa. St. 152, 24 Atl. 700. More significant, however, than this inept use of the word, is the inclusion of the element of the "relocation" of the highway in the first section and its omission in the second. That may not be satisfactorily explained upon the hypothesis advanced by the appellant: that the legislature intended, in the event that a change in the course or structure of the highway was deemed

Old Saybrook *v*. Public Utilities Commission.

necessary by the Commission, to recur to the general authority given it by § 3712 to initiate proceedings for the removal of grade-crossings. The power given it by that section is not intended to be exercised where action by the Commission has become obligatory upon it because of a petition filed by the Highway Commissioner, but only in those cases where the Commission might desire to proceed of its own will. Rather, the discrepancy in the two sections makes it clear that the Act was drafted by an unskilful hand, and fails accurately to express the real legislative intent. The specific references to certain respects in which changes may be necessary to protect the safety of the traveling public, are not to be taken as measuring that intent, but, in so far as they seem to narrow the scope of the law, are to be regarded as inconsistent with the real purpose manifest in the statute.

In such a situation, it is our duty to give effect to the real intent of the legislature, if the scope of the language of the law will permit. That can be done by omitting certain of the words and phrases as inapplicable to the situation before us. So we may read § 1504, in so far as this case is concerned, as providing that, if the Commission shall find that the safety of public travel along the highways "requires a change . . . it shall issue such order to the highway commissioner concerning the . . . change . . . as may be necessary to eliminate such dangerous condition, and shall apportion the cost thereof equitably among " the interested parties.

The question reserved for our advice is, therefore, answered in the affirmative.

In this opinion the other judges concurred.