FRANKIE WHITE, ADMINISTRATRIX (ESTATE OF FIONA JOHNSON), ET AL. *v.* J. WILLIAM BURNS, COMMISSIONER OF TRANSPORTATION
(13712)
BRIAN E. BARTRON, ADMINISTRATOR (ESTATE OF TAMMY BARTRON), ET AL. *v.* J. WILLIAM BURNS, COMMISSIONER OF TRANSPORTATION
(13713)
MAGDOLONA MARIA BAYERS, EXECUTRIX (ESTATE OF MARIA SZABO KALISKA), ET AL. *v.* J. WILLIAM BURNS, COMMISSIONER OF TRANSPORTATION
(13714)
JOYCE PISCITELLI, ADMINISTRATRIX (ESTATE OF MICHAEL PISCITELLI), ET AL. *v.* J. WILLIAM BURNS, COMMISSIONER OF TRANSPORTATION
(13715)

PETERS, C. J., HEALEY, CALLAHAN, COVELLO and HULL, Js.

Argued October 10, 1989—decision released January 2, 1990

*Richard A. Bieder,* with whom, on the brief, were *Joan C. Harrington, Joseph B. Barnes, Vincent R. Falcone* and *George A. Dagon, Jr.,* for the appellants (plaintiffs).

*Arnold J. Bai,* with whom were *Lawrence Russ,* assistant attorney general, and, on the brief, *Clarine Nardi Riddle,* attorney general, *Arnold Shimelman,* assistant attorney general, and *Garie J. Mulcahey,* for the appellee (defendant).

ARTHUR H. HEALEY, J. These cases are consolidated appeals arising out of several actions brought under General Statutes § 13a-144[1] against the defendant J. William Burns, commissioner of transportation (commissioner), by the plaintiffs on behalf of the estates of individuals who were fatally injured and several others

---

[1] General Statutes § 13a-144 provides: "DAMAGES FOR INJURIES SUSTAINED ON STATE HIGHWAYS OR SIDEWALKS. Any person injured in person or property through the neglect or default of the state or any of its employees by means of any defective highway, bridge or sidewalk which it is the duty of the commissioner of transportation to keep in repair, or by reason of the lack of any railing or fence on the side of such bridge or part of such road which may be raised above the adjoining ground so as to be unsafe for travel or, in case of the death of any person by reason of any such neglect or default, the executor or administrator of such person, may bring a civil action to recover damages sustained thereby against the commissioner in the superior court. No such action shall be brought except within two years from the date of such injury, nor unless notice of such injury and a general description of the same and of the cause thereof and of the time and place of its occurrence has been given in writing within ninety days thereafter to the commissioner. Such action shall be tried to the court or jury, and such portion of the amount of the judgment rendered therein as exceeds any amount paid to the plaintiff prior thereto under insurance liability policies held by the state shall, upon the filing with the comptroller of a certified copy of such judgment, be paid by the state out of the appropriation for the commissioner for repair of highways; but no costs

who were seriously injured in a collision on interstate 95 in Stratford. The trial court, *Cioffi, J.*, granted summary judgment on the plaintiffs' amended complaints in favor of the defendant on the ground that an action brought under § 13a-144 requires a plaintiff to prove that the highway defect alleged to have caused the death or injury was the sole proximate cause of such death and/or injury. The plaintiffs have appealed from that decision. We find no error.

The following facts are not in dispute. On January 19, 1983, a tractor trailer truck driven by Charles Kluttz struck a number of vehicles at the Stratford toll plaza on interstate 95 killing seven people and injuring several other persons. Kluttz was subsequently convicted of seven counts of negligent homicide.

The plaintiffs sued the commissioner under § 13a-144, alleging improper design and placement of the toll booths including the commissioner's failure to provide adequate warning systems to alert drivers that they were approaching the toll booths. In their amended complaints, the plaintiffs specifically alleged that the

---

or judgment fee in any such action shall be taxed against the defendant. This section shall not be construed so as to relieve any contractor or other person, through whose neglect or default any such injury may have occurred, from liability to the state; and, upon payment by the comptroller of any judgment rendered under the provisions of this section, the state shall be subrogated to the rights of such injured person to recover from any such contractor or other person an amount equal to the judgment it has so paid. The commissioner, with the approval of the attorney general and the consent of the court before which any such action is pending, may make an offer of judgment in settlement of any such claim. The commissioner and the state shall not be liable in damages for injury to person or property when such injury occurred on any highway or part thereof abandoned by the state or on any portion of a highway not a state highway but connecting with or crossing a state highway, which portion is not within the traveled portion of such state highway. The requirement of notice specified in this section shall be deemed complied with if an action is commenced, by a writ and complaint setting forth the injury and a general description of the same and of the cause thereof and of the time and place of its occurrence, within the time limited for the giving of such notice."

deaths and injuries "[were] caused, but not solely caused, by the neglect and default of the State or any of its employees, pursuant to Section 13a-144 . . . . "

On March 29, 1989, the trial court, on its own motion, granted summary judgment in favor of the commissioner. In doing so, it pointed out that because § 13a-144 authorizes a statutory cause of action where there was no common law right "to sue the State for negligence . . . the case law has established the fact that the actions of the Commissioner or employees of the State and the highway department must be [proven] the sole proximate cause of the injury" in order for a plaintiff to recover. The plaintiffs appealed from that decision. We transferred these cases from the Appellate Court to ourselves pursuant to Practice Book § 4023.

The only issue on these appeals is whether the trial court erred in granting summary judgment on the ground that a plaintiff bringing an action under § 13a-144 must prove that the highway defect alleged to have caused the death or injury must have been the sole proximate cause of such death or injury. The plaintiffs make several related claims. Basically, they contend that the legislative intent, history and purpose of the state highway liability statute mandate a different proximate cause standard and that, therefore, the judicial construction of this statute must be reexamined. The plaintiffs assert that this should be done not only because we have the authority to do so, but because our erroneous judicial construction of § 13a-144, beginning with our construction of the statute in *Perrotti* v. *Bennett,* 94 Conn. 533, 109 A. 890 (1920), has been continued in subsequent decisions down to the present time. They are not, however, requesting us to overturn "precedent for new policy reasons" but are rather directing "[our] attention to an old mistake in statutory interpretation" and requesting us "to correct a

past error." In so arguing, they maintain that: (1) the legislative history of § 13a-144 shows "an intent to reject 'sole proximate causation' ' "; (2) the plain language of § 13a-144 shows a legislative intent not to incorporate sole proximate cause; (3) the subrogation clause of § 13a-144 is "incompatible with 'sole proximate cause' ' "; and (4) the policy goals of § 13a-144 "do not mandate 'sole proximate cause.' ' " We do not agree with any of the plaintiffs' claims and analyze them seriatim below.

In interpreting a statute the court must ascertain and give effect to the intent of the legislature. *State* v. *White,* 204 Conn. 410, 421, 528 A.2d 811 (1987); *State* v. *Whiteman,* 204 Conn. 98, 101, 526 A.2d 869 (1987). " '[T]he meaning of [a] statute must, in the first instance, be sought in the language in which the act is framed . . . . ' " 2A J. Sutherland, Statutory Construction (4th Ed. Sands) § 46.01, quoting *Caminetti* v. *United States,* 242 U.S. 470, 485, 37 S. Ct. 917, 61 L. Ed. 442 (1917). "If the language of the statute is clear, it is assumed that the words themselves express the intent of the legislature . . . ." *Anderson* v. *Ludgin,* 175 Conn. 545, 552, 400 A.2d 712 (1978); *Lamb* v. *Burns,* 202 Conn. 158, 167, 520 A.2d 190 (1987). Where the statute presents no ambiguity, we need look no further than the words themselves which we assume express the intention of the legislature. *Stitzer* v. *Rinaldi's Restaurant,* 211 Conn. 116, 118, 557 A.2d 1256 (1989); *State* v. *Dolphin,* 203 Conn. 506, 521, 525 A.2d 509 (1987); *Rhodes* v. *Hartford,* 201 Conn. 89, 93, 513 A.2d 124 (1986). "When we are confronted, however, with ambiguity in a statute, we seek to ascertain the actual intent by looking to the words of the statute itself . . . the legislative history and circumstances surrounding the enactment of the statute . . . and the purpose the statute is to serve." *Rhodes* v. *Hartford,* supra; *Phelps Dodge Copper Products Co.* v. *Groppo,* 204 Conn. 122, 128, 527 A.2d 672 (1987).

"It is well established law that the state is immune from suit unless it consents to be sued by appropriate legislation waiving sovereign immunity in certain prescribed cases"; *Duguay* v. *Hopkins,* 191 Conn. 222, 227, 464 A.2d 45 (1983); *Baker* v. *Ives,* 162 Conn. 295, 298, 294 A.2d 290 (1972); *Murphy* v. *Ives,* 151 Conn. 259, 262–63, 196 A.2d 596 (1963); "and that since the state can act only through its officers and agents a suit against a state officer is in effect one against the sovereign state." *Horton* v. *Meskill,* 172 Conn. 615, 623, 376 A.2d 359 (1977). The state and its municipalities enjoy governmental immunity, in certain circumstances, from liability for their tortious acts. *Ryszkiewicz* v. *New Britain,* 193 Conn. 589, 593, 479 A.2d 793 (1984). The state legislature, however, possesses the authority to abrogate any governmental immunity by statute that the common law gives to the state and municipalities. Id. Indeed, this is what the legislature did in the area of highway defects when it enacted the state and municipal highway liability statutes. The state, which ordinarily would not be liable, permitted itself, as a matter of grace, to be sued under the express conditions of the statute. Therefore, because the state has permitted itself to be sued in certain circumstances, this court has recognized the well established principle that statutes in derogation of sovereign immunity should be strictly construed. *DeFonce Construction Corporation* v. *State,* 198 Conn. 185, 188, 501 A.2d 745 (1985); *Sestito* v. *Groton,* 178 Conn. 520, 524, 423 A.2d 165 (1979); *Berger, Lehman Associates, Inc.* v. *State,* 178 Conn. 352, 355–56, 422 A.2d 268 (1979); 2A J. Sutherland, supra, § 58.04. Where there is any doubt about their meaning or intent they are given the effect which makes the least rather than the most change in sovereign immunity. See *Dennis* v. *Shaw,* 137 Conn. 450, 452, 78 A.2d 691 (1951). Further, this court has stated that "the state's sovereign right not to be sued with-

out its consent is 'not to be diminished by statute, unless a clear intention to that effect on the part of the legislature is disclosed, by the use of express terms . . . .' " *Murphy* v. *Ives,* supra, 262–63.

The first legislative act waiving a municipality's immunity to suit for a defect in a highway appeared in the Acts of 1672. The general court ordered the counties and towns to keep their roads and bridges in sufficient repair and if an individual should sustain an injury, the county or town was to pay a fine of one hundred pounds. The order specifically stated: "That if any person at any time [lose] his life through defect or insufficiency of such Bridges, in passing any such Bridge or High-way after due warning . . . then the County or Town which ought to secure such ways or Bridges, shall pay a fine. . . ." The order further stated: "And if any person [lose] a Limb . . . through such defect . . . the County or Town through whose neglect such hurt is done shall pay . . . ." Acts of 1672, p. 7. Thus, while the common law did not subject municipalities to liability for injuries due to a defective highway; see *Beardsley* v. *Hartford,* 50 Conn. 529, 537 (1883); this branch of sovereign immunity has been abrogated since 1672 as to a town.

Insofar "as it affect[ed] the duty and liability of the towns, the act of 1672 [was] in force [in 1899]" when this court decided *Bartram* v. *Sharon,* 71 Conn. 686, 43 A. 143 (1899). In *Bartram,* we announced that sole proximate cause was to be the standard for determining liability under the municipal highway liability statute. The municipal highway liability statute in effect at the time *Bartram* was decided was § 2673[2] of the

---

[2] General Statutes (1887 Rev.) § 2673 provided: "Any person injured in person or property by means of a defective road or bridge may recover damages from the party bound to keep it in repair; but no action for any such injury shall be maintained against any town, city, corporation, or borough, unless written notice of such injury, and the nature and cause thereof,

1887 Revision of the General Statutes, which provided in part: "Any person injured in person or property by means of a defective road or bridge may recover damages from the party bound to keep it in repair; but no action for any such injury shall be maintained against any town, city, corporation, or borough, unless written notice . . . . " The parties to these appeals lay great stress on the meaning of *Bartram.*

*Bartram* involved an action against a municipality to recover damages for personal injuries claimed to have been caused by a defective highway. In that case, the plaintiff, a passenger in a horse-drawn wagon, was injured when her driver, who himself was found guilty of negligence, operated the wagon so that it overturned upon striking a defect in the highway that the defendant town had failed to repair. *Bartram* v. *Sharon,* supra, 687. We reversed the judgment of the trial court that had awarded the plaintiff damages against the defendant town. In that case, we said: "The precise point decided in this case is, that a traveler on a highway [Bartram] cannot be injured through a defect in the highway, within the meaning of our statute, when the culpable negligence of a fellow traveler [Bartram's driver] is a proximate cause of [her] injury. We think this construction is demanded by the language and history of the Act, and also that it is in accord with sound public policy." Id., 697.

In *Bartram,* after tracing the historical evolution of the municipal highway liability statute, we cautioned that the statute "should not be extended by construction beyond the plain meaning of its words" and that

and of the time and place of its occurrence shall, within sixty days thereafter, or if such defect consist of snow or ice, or both, within fifteen days thereafter, be given to a selectman of such town or to the clerk of such city, corporation, or borough; and when the injury is caused by a structure legally placed on such road by a railroad company, it and not the party bound to keep the road in repair, shall be liable therefor."

the "liability of the towns is to pay a penalty." Id., 694. *Bartram* set out the conditions upon which the penalty is incurred as being a defect in the highway, a "failure or neglect" of the town to make sufficient repair that involved "questions of reasonable notice and knowledge, and reasonable time" and "[a]n injury caused through or by means of the defect" to one lawfully using the highway. Id., 694–95. Because all of these conditions must concur to fasten liability on the town, *Bartram* went on to say that "[i]t follows that an injury caused by the culpable negligence of a traveler, whether to himself or to another, does not happen by means of or through a defect in the highway, even if such defect were a *concurring cause.* One reason why a person injured through his own carelessness cannot maintain an action against the town *is, that the injury caused by his own carelessness is not through or by means of the defect. This reason applies with equal force when the injury is caused through the carelessness of a third person."* (Emphasis added.) Id., 695.

We stated, however, in *Bartram* that "[i]f the language of the statute had been used in reference to a common-law tort, it might well be claimed that it is broad enough to cover an injury resulting from two combining torts; for in that case the controlling question would be, — has the defendant committed a tort? But the language is not so used; it does not refer to a common-law tort. There is, therefore, no question involved as to the liability of the town for a wrong which cannot be defeated by any concurring wrong; the language is simply defining the conditions of a statutory penalty, and when it says that penalty shall arise in case of an injury caused through or by means of a defect in the highway, *it is an extension of the natural meaning of the words to include an injury caused by the wrongful act of a third person and such defect. It cannot with truth be said that the injury is caused by the defect.*

This appears more clearly in considering the other purpose of the Act, which is intended not merely to stimulate towns to the performance of a governmental act by imposing a penalty for failure, but also to indemnify against the dangers of an insufficient highway all who put it to its proper use." (Emphasis added.) Id., 695–96.

It is clear that *Bartram* in its analysis drew on the plain meaning of the statutory language. It determined that a plaintiff injured by his own negligence "even if [the] defect were a concurring cause" is not injured "by means of or through a defect in the highway," under the statute. Id., 695. *Bartram* indicated that that reasoning applies even when the injury is caused through the carelessness of a third person. Therefore, it is an "extension" of the natural meaning of the statutory language to "include" an injury caused by the wrongful act of a third person. Id., 695–96. Having then decided that the defendant town is liable only if the defect is demonstrated to be the *sole* proximate cause of the plaintiff's injury, *Bartram* reversed the trial court saying that when "the Superior Court finds that the wrongful act of the plaintiff's driver is *a* proximate cause of her injury, it finds a fact inconsistent with the liability of the town; and upon the facts found judgment for the defendant is the conclusion of the law." (Emphasis added.) Id., 696. *Bartram* thus laid down the sole proximate cause standard for liability under the municipal highway liability statute; that standard is still the law under that statute, now General Statutes § 13a-149. See, e.g., *Lukas* v. *New Haven,* 184 Conn. 205, 207, 439 A.2d 949 (1981).

It was not until 1915 that the legislature enacted a statute concerning the state's liability for injuries sustained due to defects on state highways. It was entitled "An Act Concerning Payment by the State of Damages sustained by Injuries on Trunk Line Highways."

Public Acts 1915, No. 307. That act provided in part: "Any person injured in person or property through the neglect or default of the state or any of its employees by means of a defective road or bridge which it is the duty of the state highway commissioner to keep in repair . . . may bring a civil action to recover damages sustained thereby against the highway commissioner . . . ."[3]

In 1920, this court decided *Perrotti* v. *Bennett,* supra, which was an action for damages against the state highway commissioner for injuries alleged to have been

---

[3] This statute, as enacted in 1915, provided: "SECTION 1. Any person injured in person or property through the neglect or default of the state or any of its employees by means of a defective road or bridge which it is the duty of the state highway commissioner to keep in repair, or by reason of the want of any railing or fence on the side of such bridge or part of such road so raised above the adjoining ground as to be unsafe for travel, which railing or fence it is the duty of said highway commissioner to erect and maintain, or, in case of death by such injury, his executor or administrator, may bring a civil action to recover damages sustained thereby against the highway commissioner in the superior court or, in any case within its jurisdiction, the court of common pleas in the county wherein the injury was sustained. No such action shall be brought except within one year from the date of such injury, nor unless notice of such injury and a general description of the same and of the cause thereof and of the time and place of its occurrence has been given within sixty days thereafter to the highway commissioner.

"SEC. 2. Such action shall be tried to the court, and if the court shall find for the plaintiff, the amount of the judgment rendered therein shall, upon the filing with the comptroller of a certified copy of such judgment, be paid by the state out of the appropriation for the highway commissioner for repair of highways; but no costs or judgment fee in any such action shall be taxed against the defendant.

"SEC. 3. This act shall not be construed to relieve any contractor or other person, through whose neglect or default any such injury may have occurred, from liability to the state; and, upon payment by the comptroller of any judgment rendered under the provisions of this act, the state shall be subrogated to the rights of such injured person to recover from any such contractor or other person an amount equal to the judgment it has so paid.

"SEC. 4. The highway commissioner, with the approval of the attorney-general and the consent of the court before which any such action may be pending, may make an offer of judgment in settlement of any such claim."

caused by his negligence in the construction and maintenance of a state highway.[4] *Perrotti* applied the sole proximate cause standard enunciated in *Bartram* to the state highway liability statute. *Perrotti* v. *Bennett,* supra, 542. At that time, Chief Justice Wheeler said: "We do not share the plaintiff's view that the trunk-line statute (Chapter 76, Revision 1918) affords a right of recovery upon a different basis from the statute imposing liability against towns for damages from defective highways . . . . We think the legislative intent was to impose upon the highway commissioner, as the representative of the State, the same burden theretofore laid upon the towns as respects these highways, and that the limitations upon municipal liability apply equally to State liability." Id. Since *Perrotti,* we have consistently applied the sole proximate cause standard to actions brought under § 13a-144. See, e.g., *Williamson* v. *Commissioner,* 209 Conn. 310, 551 A.2d 704 (1988); *Lamb* v. *Burns,* supra; *Kolich* v. *Shugrue,* 198 Conn. 322, 502 A.2d 918 (1986); *Comba* v. *Ridgefield,* 177 Conn. 268, 413 A.2d 859 (1979); *Donnelly* v. *Ives,* 159 Conn. 163, 268 A.2d 406 (1970); *Murphy* v. *Ives,* supra; *Tuckel* v. *Argraves,* 148 Conn. 355, 170 A.2d 895 (1961); *Rapid Motor Lines, Inc.* v. *Cox,* 134 Conn. 235, 56 A.2d 519 (1947).

The plaintiffs argue that the judicial interpretation of the state highway liability statute to require sole proximate cause is "wholly unsupported by the language, history and purpose of Section 13a-144." The plaintiffs argue that when this court first announced the sole proximate cause standard in *Perrotti,* there was no analysis of the statute, no reliance on any of the traditional tenets of statutory construction, but that

---

[4] *Perrotti* v. *Bennett,* 94 Conn. 533, 109 A. 890 (1920), was brought under the trunk line statute. General Statutes (1918 Rev.) § 1515. That statute, entitled "Damages for injuries sustained on state highways," was substantially the same as when it was enacted in 1915. See footnote 3, supra.

in one sentence this court made a determination of legislative intent that has been relied upon over the years without question. The judicial interpretation of the statute "was not," the plaintiffs argue, "based on a reasoned analysis of the language, history and purpose of the statute and legislative acquiescence cannot correct that error." In a word, *Perrotti,* the plaintiffs argue, was wrong, as is its progeny.

Initially, the plaintiffs argue that *Perrotti* incorrectly stated that the state highway liability statute enacted in 1915, now § 13a-144, intended that liability be imposed upon the state on the same basis as upon municipalities. The plaintiffs argue that it is apparent that the legislature, when it enacted the state highway liability statute in 1915, intended that liability be imposed on the state on a different basis than that imposed upon municipalities. For this argument, the plaintiffs point to the following language from *Bartram:* "If the language of the statute had been used in reference to a common-law tort, it might well be claimed that it is broad enough to cover an injury resulting from two combining torts; for in that case the controlling question would be, — has the defendant committed a tort? But the language is not so used; it does not refer to a common-law tort." *Bartram* v. *Sharon,* supra, 695. The state liability statute enacted in 1915, the plaintiffs maintain, was structured on this causation distinction in *Bartram* between, on the one hand, a statute which has no reference to a common law tort and, on the other hand, a statute whose language does refer to a common law tort. The 1915 statute, the plaintiffs claim, made a material departure from the *Bartram* language, limiting municipal liability. While the municipal liability statute imposed liability only for injuries or death caused "by means of a defective road," the plaintiffs point out that the 1915 statute imposed liability for injuries or death caused

*"through the neglect or default of the state . . .* by means of a defective road." (Emphasis added.) Therefore, the plaintiffs maintain, the legislature incorporated into the 1915 state liability statute the very language "in reference to a common-law tort" (i.e., neglect or default) that the *Bartram* court found absent in the municipal highway liability statute. The legislature's decision in 1915 to "alter" the language used in the municipal highway liability statute must, the plaintiffs contend, under recognized tenets of statutory construction, be presumed to be intentional and willful. Thus, by adding the language "through the neglect or default of the state" to the preexisting format of "by means of a defective road," the plaintiffs urge, "the Legislature was affirmatively indicating its intent against incorporating 'sole proximate cause' as an element of State liability." We do not agree.

We address the plaintiffs' argument that a different basis of liability was intended under the 1915 state highway statute than under the municipal statute interpreted in *Bartram.* It is true that "neglect" and "default" are terms that have a common meaning and each is concerned with the act or failure to act that is prominent in common law negligence, i.e., the failure to perform a legal duty. We have acknowledged that "[s]tatutory language is to be given its plain and ordinary meaning unless such meaning is clearly at odds with the legislative intent." *State* v. *Taylor,* 153 Conn. 72, 82, 214 A.2d 362 (1965), cert. denied, 384 U.S. 921, 86 S. Ct. 1372, 16 L. Ed. 2d 442 (1966). The plaintiff correctly asserts that it is a tenet of statutory construction that no word in a statute should be considered superfluous. *Green* v. *Freedom of Information Commission,* 178 Conn. 700, 703, 425 A.2d 122 (1979). But recognizing the ordinary meaning of "neglect" and "default" does not persuade us that the legislature intended liability to be imposed on the state on a differ-

ent basis from the municipal highway liability statute. It must be remembered that because we construe a statute as a whole, not only must every word be considered, but words in a statute must be put in the context of the whole statute, together with its legislative history, its purpose and the circumstances surrounding its enactment. See, e.g., *Winchester* v. *Board of Labor Relations,* 175 Conn. 349, 356, 402 A.2d 332 (1978). It is elementary that statutes should be considered as a whole and that the application of common sense to statutory language is not to be excluded. *Dukes* v. *Durante,* 192 Conn. 207, 214, 471 A.2d 1368 (1984).

The state highway liability statute is a legislative exception to the common law doctrine of sovereign immunity and is to be strictly construed in favor of the state. While negligence was a common law tort, there was no liability of the sovereign at common law for a defective highway in negligence or on any other common law theory. *Baker* v. *Ives,* supra, 298; *Bartram* v. *Sharon,* supra. The state highway liability statute imposes the duty to keep the state highways in repair upon the highway commissioner; that is the statutory command. Therefore, because there was no right of action against the sovereign state at common law, a plaintiff, in order to recover, must bring himself within § 13a-144. *Baker* v. *Ives,* supra. The state highway liability statute construed in *Perrotti,* which was the precursor of § 13a-144, created and imposed a statutory duty upon the commissioner, the breach of which gave rise to his liability in damages; it was "not really one to recover damages for an injury arising from negligence." *Shirlock* v. *MacDonald,* 121 Conn. 611, 613, 186 A. 562 (1936); *McManus* v. *Jarvis,* 128 Conn. 707, 710, 22 A.2d 857 (1939); see *Lamb* v. *Burns,* supra, 169.

The plaintiffs' argument, if accepted, would rewrite the statute so that it would no longer be one imposing liability upon the commissioner solely for the breach

of a statutory duty. Rather, the plaintiffs would make the statute a hybrid whereby the commissioner's neglect or default in performing his statutory duty would be determined in conjunction with principles of proximate causation as well as the negligence of third party "tortfeasors." The plaintiff would have us interpret the statute, despite its language, to embody the theorem that when the culpable negligence of two persons concurs and each is a proximate cause of injury, then the injured party may recover his whole damage from either or both of the wrongdoers. This was not, however, the legislative intent even though the terms "neglect" and "default" were in the state highway liability statute at the time *Perrotti* was handed down.

There can be no question but that the nature of the duty resting upon the state at the time of *Perrotti* (and presently) is to exercise reasonable care to keep the state highways in a reasonably safe condition for public travelers whether by pedestrians or vehicles. See, e.g., *Donnelly* v. *Ives, supra,* 167. That duty is that of reasonable care, that is, that degree of care which the ordinarily prudent person would exercise under similar circumstances. It is only through the "neglect" and "default" of human character on the part of "the state or any of its employees" that a violation of the duty statutorily imposed on the commissioner ripens into liability because of injury caused "by means of any defective highway."[5] See General Statutes § 13a-144. The legislature's use of the terms "neglect or default" in the 1915 state highway liability statute did not indicate a legislative intent to refer to a "common-law tort," as the plaintiffs claim in drawing on *Bartram.* Rather,

---

[5] We do not here set out the entire predicate to state liability in those cases involving the existence and notice of a defect, the requisite statutory notice required to be given the commissioner under General Statutes § 13a-144. Reference may be made to such cases as *Baker* v. *Ives,* 162 Conn. 295, 294 A.2d 290 (1972), and *Rapid Motor Lines, Inc.* v. *Cox,* 134 Conn. 235, 56 A.2d 519 (1947).

we can fairly presume that by 1915 the legislature was aware that this court had stated that the duty of a municipality was to exercise reasonable care to keep its highways reasonably safe for travel. See, e.g., *Smith* v. *Milford,* 89 Conn. 24, 92 A. 675 (1914); *Upton* v. *Windham,* 75 Conn. 288, 53 A. 660 (1902). Therefore, the terms "neglect" and "default" refer solely to that action or failure to act by the commissioner which triggers liability for breach of his statutory duty to repair and maintain the state highway.

The circumstance that § 13a-144 incorporates a similar standard to that used in common law negligence does not mean that the cause of action is one in negligence; it is still clearly one for a breach of a statutory duty by the commissioner. Even where liability attaches to the commissioner under § 13a-144, it is not because of any tort committed by him against the plaintiff, but because of his breach of his statutory duty under the statute. The words "neglect" and "default," as used in the statute, do not alter that consequence either at the time of *Perrotti* or presently.

The plaintiffs' argument that, because the state highway liability statute contains different language from the municipal highway liability statute, we should therefore impose a different standard of causation is not persuasive. We do not agree with the plaintiffs' argument that the plain language and the legislative history of § 13a-144 demonstrate the legislative intent not to incorporate the sole proximate cause standard into § 13a-144 when it added the "through the neglect or default of the state" language to § 13a-144 that was not in the municipal highway liability statute enacted many years before.

The plaintiffs next argue that the enactment of the subrogation right given to the state in § 13a-144 indicates a legislative intent not to require sole proximate

causation as the standard for recovery in actions brought under this statute. The plaintiffs point out that the state highway liability statute, at its very inception, created a right of subrogation on behalf of the state to the rights of the injured party against a third party through whose "neglect" or "default" the injuries occurred, while there was no comparable right of subrogation under the municipal highway liability statute. The plaintiffs claim, therefore, that that "is presumed to mean that the legislature intended a different legislative scheme for State liability." Pointing out that *Bartram* did not consider the impact of subrogation, the plaintiffs go on to contend that the statutorily created right of subrogation for the state "is logically inconsistent with the *Bartram* requirement of sole proximate causation." The inclusion of the subrogation provision indicates, it is claimed, that the legislature "anticipated highway defect injuries occurring through the combined neglect or default of both the state and *third* parties," (emphasis added) thus indicating a concurrent causation standard. Therefore, it is maintained that if the injured party, to whose rights the state is subrogated, were required to meet a burden of sole proximate cause as against the state, there would be no right of recovery against another tortfeasor to which the state could be subrogated. Such a circumstance, the plaintiffs contend, would render the subrogation clause superfluous. Had the legislature intended to incorporate the "sole proximate cause" standard into § 13a-144, the plaintiffs urge, there would have been no need for a subrogation clause of this type because the state would not be liable at all for any injury concurrently caused by a third party. Thus, the subrogation clause "is a child of the 'concurrent causation' standard and to construe the state liability statute to require sole proximate cause would make the subrogation clause merely an orphan of [that] statute," a "bizarre result," the plaintiffs

argue, that we cannot presume the legislature intended. Although the plaintiffs are correct in stating that the state highway liability statute does have a subrogation clause and that the municipal highway liability statute construed in *Bartram* did not,[6] we are not persuaded by their claim.

In our objective to construe statutory language so as to give effect to the apparent intent of the legislature, mindful of inherent statutory interrelationships, we consider statutes "as a whole, with a view toward reconciling their separate parts in order to render a reasonable overall interpretation; [and in doing so] the application, moreover, of common sense to the statutory language is not to be excluded." *LaProvidenza* v. *State Employees' Retirement Commission,* 178 Conn. 23, 29, 420 A.2d 905 (1979); *Norwich* v. *Silverberg,* 200 Conn. 367, 371, 511 A.2d 336 (1986). The subrogation provision follows that portion of the statute imposing the duty of repair upon the commissioner and it provides: "This section shall not be construed so as to relieve any contractor or other person, through whose neglect or default any such injury may have occurred, from liability to the state; and, upon payment by the comptroller of any judgment rendered under the provisions of this section, the state shall be subrogated to the rights of such injured person to recover from any such contractor or other person an amount equal to the judgment it has so paid." General Statutes § 13a-144.

This court has said that " '[s]ubrogation is a doctrine which equity borrowed from the civil law and administers so as to secure justice without regard to form or mere technicality.' " *Home Owners' Loan Corporation* v. *Sears, Roebuck & Co.,* 123 Conn. 232, 238, 193 A. 769 (1937). The right to it may arise in several

---

[6] The municipal highway liability statute still does not contain a subrogation clause. General Statutes § 13a-149.

ways. See 83 C.J.S., Subrogation § 3 et seq. Under § 13a-144, it is conferred statutorily. In enacting § 13a-144, and specifically the subrogation portion, the legislature expressly told courts that "[t]his section [§ 13a-144] *shall not be construed* so as to relieve any contractor or other person, through whose neglect or default any such injury may have occurred, from liability to the state . . . . " General Statutes § 13a-144. The subrogation portion of the statute must be read in conjunction with our earlier analysis of the first portion of § 13a-144 where the duty to repair and maintain is imposed *solely* upon the commissioner. "Any such[7] injury," in the first sentence of the subrogation portion, plainly refers to the cause of action authorized earlier in § 13a-144 to "[a]ny person injured in person or property through the neglect or default of the state or any of its employees by means of any defective highway, bridge or sidewalk . . . . " The commissioner, as already pointed out, is the *only one* upon whom is imposed the duty to repair under § 13a-144. The language in the subrogation portion speaks plainly *only* to a contractor's or other person's *liability to the state in subrogation* where the commissioner has *already* become liable to a plaintiff injured through the neglect or default of a "contractor or other person." It does not speak to the liability of a contractor or other person to a plaintiff in damages because of injuries suffered from a "defective highway."

In addition, the words "any such injury" in the subrogation provision plainly cannot have been intended to be read as "any such injury" proximately caused

---

[7] We have had occasion to note the definition of "such." In *Verrastro v. Sivertsen,* 188 Conn. 213, 221 n.7, 448 A.2d 1344 (1982), we said: "The common definition of the word 'such' includes 'having a quality already . . . specified . . . of the sort . . . previously indicated or implied . . . previously characterized or specified'; and 'AFOREMENTIONED.' Webster, Third New International Dictionary." See *LaProvidenza v. State Employees' Retirement Commission,* 178 Conn. 23, 27, 420 A.2d 905 (1979).

"through the neglect or default" of "any contractor or other person" in the sense that their neglect or default proximately caused a highway to be a "defective highway." This is so because, even though some neglect or default of "any contractor or other person" may occasion a condition in a state highway that may ultimately bring about an injury, that condition on the highway cannot be the basis of a cause of action under § 13a-144 unless and until that highway condition becomes a "defective highway." It is only a "defective highway" that the commissioner has a duty to repair under the statute. For that to come about, a plaintiff must have shown that there was a defect in the highway; see *Donnelly* v. *Ives,* supra, 167; that the state had notice of the defect, that thereafter the state failed to exercise reasonable care to remedy the defect, that in failing to remedy the defective condition the state failed in its duty to exercise reasonable care to maintain the highway in a reasonably safe condition so that it became a "defective highway," and finally, that the "defective highway" was the sole proximate cause of the injury.[8]

In our view, contrary to the plaintiffs' claims, there is a sound reason why the legislature included the subrogation provision in the 1915 statute. At the time the 1915 statute was enacted, we had already recognized that a municipality could be liable under the municipal highway liability statute because of the action or failure to act of a third party concerning a highway defect. See *Smith* v. *Milford,* supra. *Smith* was decided within one year before the 1915 statute was enacted. It is eminently reasonable, therefore, to believe that the subrogation provision was included in the 1915 statute to permit the state to be subrogated so as to recover state monies expended because of the actions of third

---

[8] This, of course, assumes that the plaintiff has not been shown to be guilty of contributory negligence.

parties. Moreover, it is to be remembered that the 1915 state highway liability statute was enacted when the state was in the process of taking over from the towns and imposing upon the state highway commissioner the duty and maintenance of certain highways. See *Horton* v. *Macdonald,* 105 Conn. 356, 360, 135 A. 442 (1926). The subrogation provision of § 13a-144 is compatible and consistent with the sole proximate cause standard in a cause of action brought under § 13a-144. Our decision in *Root* v. *Connecticut Co.,* 94 Conn. 227, 108 A. 506 (1919), does not, as the plaintiff suggests, require the contrary. The plain language of § 13a-144 does not, we conclude, show a legislative intent not to incorporate "sole proximate cause" into that statute.

Next, the plaintiffs argue that the policy goals of the state highway liability statute do not mandate "sole proximate cause." They claim that we should not only examine the purpose of a legislative enactment as an aid to statutory construction but also that we should inquire into public policy, which is an aspect of the judicial function. The plaintiffs, therefore, identify three specific policy considerations that they deem relevant to the judicial construction of the state highway liability statute: (1) cost distribution; (2) indemnification of travelers; and (3) the promotion of safety. None of these considerations, the plaintiffs argue, either explicitly or implicitly, requires a sole proximate cause standard.

At the outset, it is settled that the legislature is "the branch of government charged with the determination of public policy." *State* v. *Clemente,* 166 Conn. 501, 546, 353 A.2d 723 (1974). It "is the arbiter of public policy." *State* v. *Gilletto,* 98 Conn. 702, 714, 120 A. 567 (1923); *Lyman* v. *Adorno,* 133 Conn. 511, 514, 52 A.2d 702 (1947). "A statute declares public policy." *Laurel Bank & Trust Co.* v. *Mark Ford, Inc.,* 182 Conn. 437, 442, 438 A.2d 705 (1980). "Public policy is akin to the public good or the public welfare. It varies as the inter-

ests and goals of society are modified." *Van Wagner* v. *Van Wagner,* 1 Conn. App. 578, 582, 474 A.2d 110 (1984). "Conditionally valid legislation that is enacted in response to current demands serves as a valuable evidentiary source of public policy. Thus, policy considerations dictate the interpretation according to what is conceived as the purpose, equity or spirit of the statute." 2A J. Sutherland, supra, § 56.02; see *DiBiase* v. *Garnsey,* 103 Conn. 21, 27, 130 A. 81 (1925). Recognizing this, as we must, "[w]e can only take the statutes as they have been enacted . . . ." *Consolidated Diesel Electric Corporation* v. *Stamford,* 156 Conn. 33, 39, 238 A.2d 410 (1968); *International Business Machines Corporation* v. *Brown,* 167 Conn. 123, 135–36, 355 A.2d 236 (1974).

Assuming that each of these policy considerations exist, we are not persuaded that singly or collectively they mandate the causation standard of "a proximate cause" rather than that of "sole proximate cause," especially in view of our earlier analysis. No one can convincingly contest that each of these policy considerations, if in fact they *were* involved, promotes highly commendable legislative objectives. But none requires the causation standard that the plaintiffs advocate. Even though the statute may have had a cost distribution consideration, it by no means follows that, because the state is a larger political entity that may have larger resources, it can more easily and more equitably absorb the tremendously greater burden imposed by the state's obligation to construct and maintain state highways by the imposition of the causation standard the plaintiffs favor. We submit that that is speculative in this instance.

More to the point, the state statute was passed at the time the state highway system was being created and at the time the duty of maintenance and repair of so-called trunk line highways and state aid highways

was taken from the towns by the Good Roads Act (and its amendment) and imposed upon the highway commissioner as the representative of the state. See *Horton* v. *Macdonald, supra.* The reason for this, we said in *Root* v. *Connecticut Co.,* 94 Conn. 227, 236, 108 A. 506 (1919), "was the larger purposes served by these roads, inter-town, inter-urban and inter-State as well, and the unfairness of making a locality pay for a benefit to the public of the entire State or of a number of States." This is a far cry from concluding that such a transfer signalled an intent to move away from the sole proximate causation standard. Moreover, for the plaintiffs to say that the legislature would have known that the state did not necessarily require the same protection as a municipality because the state would be in a better position to absorb the costs and spread the risk of highway use is sheer theorizing about a matter that hardly admits of demonstration on this record, by judicial notice or otherwise. Suffice it to say that the state engages in activities of a scope and variety far beyond that of any town or city, that the demands upon its resources figuratively approach infinity, and that state operations affect vastly larger numbers of people. We can, of course, take judicial notice of the fact that this state has a state highway program that includes thousands of miles of state highways to which it appropriates substantial sums of money. See *Wessells* v. *State Department of Highways,* 562 P.2d 1042, 1048 (Alaska 1977).

Without diminishing the statutory objective to compensate those injured in the proper use of the state highways, we see no reason why that objective is not fairly managed by § 13a-144 and specifically by the sole proximate cause standard it incorporates. It promotes safety because any actionable defect that it is the duty of the commissioner to repair gives rise to a cause of

action under § 13a-144. Whether the commissioner is solely liable presents questions of fact in every case whether the highway be interstate 95 or a much less frequented highway under his jurisdiction. Any realistic view of the state's liability must recognize that any number of phenomena beyond the state's control may sow the seeds of a "defective highway" under the statute, such as abnormal weather conditions, shifts in underlying soil conditions, and acts of third parties. The legislature is entitled to structure a statutory remedy that strikes a balance between the protection of injured victims and the maintenance of reasonably safe public highways. In § 13a-144, as in the statute that this court interpreted in *Perrotti*, the legislature struck that balance by imposing a duty on the commissioner, as representative of the state, to assume liability in damages only when a defective highway is the sole proximate cause of a victim's injury. The state statute was, like the municipal statute in *Bartram*, a carve-out of sovereign immunity, and is to be read as giving no rights not expressly granted. So, we believe now, as we did in *Perrotti*, that *Bartram* correctly said: "When the State says we will give certain persons who are injured through defects in the highway, a just compensation, it by no means follows, and ought not to be implied, that the terms of this gift include those who are really injured by the illegal acts of other persons responsible for their wrongs." *Bartram* v. *Sharon*, supra, 696. The plain language of the statute in *Perrotti* and its successor, i.e., § 13a-144, does not require any deviation, as claimed, from sole proximate cause.

Next, the parties are at issue over the matter of legislative silence or legislative acquiescence in our interpretation of § 13a-144 to embody the sole proximate cause standard. The plaintiffs' claims are somewhat Janus-like. The first claim is that legislative silence after

judicial construction of § 13a-144 is irrelevant,[9] as the language of the statute established the legislative intent. The second claim is that legislative silence cannot be used to confirm legislative intent that is otherwise unsupported by the language, history and purpose of § 13a-144. We cannot, the plaintiffs claim, rely on legislative acquiescence to uphold our interpretation because, they argue, "[i]n a single sentence in *Perrotti,*[10] [this] Court made a determination about the Legislature's intent which has been relied on throughout the years, without question, as dispositive of that intent." "The judicial interpretation of the state liability statute was not based [the plaintiff continues] on a reasoned analysis of the language, history and purpose of the statute and legislative acquiescence . . . ." We address these claims and also resolve them against the plaintiffs.

In 1987, in *McDonough* v. *Connecticut Bank & Trust Co.,* 204 Conn. 104, 118–19, 527 A.2d 664 (1987), we quoted with approval from *Ralston Purina Co.* v. *Board*

---

[9] In this regard, the plaintiffs quote the following from *Jones* v. *Liberty Glass Co.,* 332 U.S. 524, 533-34, 68 S. Ct. 229, 92 L. Ed. 142 (1947), reh. denied, 333 U.S. 850, 68 S. Ct. 657, 92 L. Ed. 1132 (1948): "[T]he doctrine of legislative acquiescence is at best only an auxiliary tool for use in interpreting *ambiguous* statutory provisions." (Emphasis added.) They also argue that "[a]t best, legislative silence as a tool of statutory construction, should be used only as confirmation that an otherwise well-supported statutory interpretation is reasonable." We conclude that General Statutes § 13a-144 is not ambiguous, that our construction of it is reasonable and sound and that the effect of legislative silence and/or acquiescence is appropriately to be discussed.

[10] The relevant portion of *Perrotti* v. *Bennett,* 94 Conn. 533, 109 A. 890 (1920), appears on page 542 of that decision and is the following: "We do not share the plaintiff's view that the trunk-line statute (Chapter 76, Revision 1918) affords a right of recovery upon a different basis from the statute imposing liability against towns for damages from defective highways (Revision 1918, § 1414). We think the legislative intent was to impose upon the highway commissioner, as the representative of the State, the same burden theretofore laid upon the towns as respects these highways, and that the limitations upon municipal liability apply equally to State liability."

*of Tax Review,* 203 Conn. 425, 439, 525 A.2d 91 (1987),[11] the following: " '[W]e presume that the legislature is aware of our interpretation of a statute, and that its subsequent nonaction may be understood as a validation of that interpretation. *Herald Publishing Co.* v. *Bill,* [142 Conn. 53, 63, 111 A.2d 4 (1955)]; *Forman Schools, Inc.* v. *Litchfield,* 134 Conn. 1, 6, 54 A.2d 710 (1947); *Cashman* v. *McTernan School, Inc.,* 130 Conn. 401, 408, 34 A.2d 874 (1943); *Coombs* v. *Darling,* 116 Conn. 643, 646, 166 A. 70 (1933).' " This language from *McDonough,* a workers' compensation case, followed this sentence: "Most significant is the lack of legislative action to change the long standing judicially developed standard of causation in compensation cases." *McDonough* v. *Connecticut Bank & Trust Co.,* supra, 118. In 1987, we also stated: "This court has recently made it clear that the legislature is presumed to be aware of the interpretation of a statute and 'that its subsequent nonaction may be understood as a validation of that interpretation.' *Ralston Purina Co.* v. *Board of Tax Review,* [supra, 439] . . . ." *Phelps Dodge Copper Products Co.* v. *Groppo,* 204 Conn. 122, 134, 527 A.2d 672 (1987).

*Perrotti* was decided in 1920. The sole proximate cause standard announced in that decision has been reiterated in many of our decisions over the years. See, e.g., *Williamson* v. *Commissioner,* 209 Conn. 310, 319, 551 A.2d 704 (1988); *Lamb* v. *Burns,* 202 Conn. 158, 175, 520 A.2d 190 (1987); *Kolich* v. *Shugrue,* 198 Conn. 322, 326, 502 A.2d 918 (1986); *Hay* v. *Hill,* 137 Conn. 285, 289, 76 A.2d 924 (1950); *Pape* v. *Cox,* 129 Conn. 256, 259, 28 A.2d 10 (1942); *Shirlock* v. *Macdonald,* 121 Conn. 611, 613, 186 A. 562 (1936); *Horton* v. *Mac-*

---

[11] In *Ralston Purina Co.* v. *Board of Tax Review,* 203 Conn. 425, 525 A.2d 91 (1987), we were called upon to depart from our earlier interpretation of General Statutes § 12-62 in our earlier decision in *Uniroyal, Inc.* v. *Board of Tax Review,* 182 Conn. 619, 438 A.2d 782 (1981). We declined to do so.

*donald,* supra, 360–61. Literally dozens of legislatures have convened, deliberated and adjourned since the time of *Perrotti.* None of these legislatures has amended the state highway liability statute in any fashion that indicates legislative dissatisfaction with the sole proximate cause standard of *Perrotti* and its progeny. Moreover, over the many years since *Perrotti,* the legislature has had occasion to revisit the state highway liability statute and has amended it on a number of occasions, albeit in some instances by technical amendments. Amendments that are hardly technical,[12] however, include adding the right to trial by a jury as well as to court; see General Statutes (Sup. 1943) § 304g; adding what is substantially the last sentence of the present § 13a-144; see General Statutes (Sup. 1953) § 964c; adding "or sidewalk" to the language "Any person injured . . . by means of any defective road, bridge . . ." immediately after "bridge"; see General Statutes (Sup. 1955) § 1193d; see Public Acts, Spec. Sess., February, 1965, No. 574, § 50; increasing the statute of limitations within which to bring an action under the statute from one year to two years, as well as requiring the notice mandated under the statute to be given "in writing"; see Public Acts 1971, No. 38, § 1; and increasing the time from sixty days to ninety days within which to give the commissioner notice and a general description of the injury claimed, as well as the cause of the injury and the time and place of its occurrence. See Public Acts 1976, No. 76-222, § 1. In view of the long established judicial interpretation of this statute starting with *Perrotti,* it is fair and reasonable to assume that the legislature has approved of the sole proximate cause standard in our judicial interpretation of this statute.

---

[12] The statute was also amended in 1967 (Public Acts 1967, Nos. 246 and 414), in 1969 (Public Acts 1969, No. 768, § 108), and in 1974 (Public Acts 1974, No. 74-183, § 201).

Finally, we should look to the question of stare decisis in this case where the plaintiffs have argued that they are not requesting that we overturn precedent for new policy reasons, but rather that compelling reasons have been given to us to overrule precedent under the exception to stare decisis because of "an old mistake" in statutory interpretation so that we may "correct a past error." Ordinarily, in view of what we have said earlier in this opinion, we would not even reach this issue, but it is prudent for us to discuss it. It is true, as the plaintiffs argue, that there is a well recognized exception to stare decisis under which a court will examine and overrule a prior decision that is clearly wrong. See *Schott Optical Glass, Inc.* v. *United States,* 750 F.2d 62, 64 (Fed. Cir. 1984). "Stare decisis is a doctrine developed by courts to accomplish the requisite element of stability in court-made law, but is not an absolute impediment to change. . . . [W]e also recognize that stability should not be confused with perpetuity. If law is to have a current relevance, courts must have and exert the capacity to change a rule of law when reason so requires. The true doctrine of stare decisis is compatible with the function of the courts. The doctrine requires a clear showing that an established rule is incorrect and harmful before it is abandoned." *In re Stranger Creek & Tributaries in Stevens County,* 77 Wash. 2d 649, 653, 466 P.2d 508 (1970).

This court has said that there is no question but that "[a] decision of this court is a controlling precedent until overruled or qualified." *Herald Publishing Co.* v. *Bill,* supra, 61–62. We have also stated that "[i]f . . . stare decisis is to continue to serve the cause of stability and certainty in the law — a condition indispensable to any well-ordered system of jurisprudence — a court should not overrule its earlier decisions unless the most cogent reasons and inescapable logic require it. . . . This is especially true when the precedent involved concerns the interpretation or construction of a statute." *Id.,*

62; see *Burger & Burger, Inc.* v. *Murren,* 202 Conn. 660, 662, 522 A.2d 812 (1987); W. Maltbie, Connecticut Appellate Procedure p. 226. It must also, however, be acknowledged that "[i]t is more important that the court should be right upon later and more elaborate consideration of the cases than consistent with previous declarations. Those doctrines only will eventually stand which bear the strictest examination and the test of experience." *Barden* v. *Northern Pacific R. Co.,* 154 U.S. 288, 322, 14 S. Ct. 1030, 38 L. Ed. 992 (1894). The United States Supreme Court has said that when it has become "convinced of former error," it has "never felt constrained to follow precedent." *Smith* v. *Allwright,* 321 U.S. 649, 665, 64 S. Ct. 757, 88 L. Ed. 987 (1943), reh. denied, 322 U.S. 769, 64 S. Ct. 1052, 88 L. Ed. 1594 (1944).

In this appeal, this court, in the proper performance of its judicial function, has reexamined the challenged precedent. Aware that neither reason nor authority in the law "offers the slightest encouragement to the notion that time petrifies into unchanging jurisprudence a palpable fallacy"; see *Flagiello* v. *Pennsylvania Hospital,* 417 Pa. 486, 511, 208 A.2d 193 (1965); our reexamination, we submit, has been thorough and sound. We have determined that the challenged precedent involves no "fallacy" and therefore no "palpable fallacy." There may well be precedent that, when challenged and reexamined, mandates that "[j]udicial honesty dictates corrective action." *Olin Mathieson Chemical Corporation* v. *White Cross Stores,* 414 Pa. 95, 100, 199 A.2d 266 (1964). This appeal presents no such case. *Perrotti* was correctly decided. That decision and its progeny remain sound. Sole proximate cause remains the standard of causation under § 13a-144.

There is no error.

In this opinion the other justices concurred.