[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION STATE OF CONNECTICUT'S MOTION TO DISMISS THIRD PARTY COMPLAINT
Louis Valentino complains that on December 15, 1987 he slipped and fell because of a pool of water which was negligently allowed to accumulate on carpeting at Teletrack in New Haven, Connecticut. Valentino, according to his amended complaint, was a patron at the Teletrack facility, owned by the defendant, General Instrument. ("G.I.") G.I. was given permission by us to implead as a third party defendant the executive director for the Division of Special Revenue of the Connecticut Department of Revenue Services. ("The state") The pleadings are closed and the case awaits assignment as a jury trial.
In the third party complaint, G.I. alleges in the first count that one of its divisions, American Totalisator Company, entered CT Page 8948 into a written contract with the state and in accordance with that agreement, it was the state's duty to maintain the Teletrack facility. Thus, if Valentino recovers damages from G.I., it claims "then such damages were caused by [the state's] . . . breach of the express provisions of said AGREEMENT." Third Party Complaint, dated May 4, 1990, first count, #8. The state in its answer admits that the written agreement between it and American Totalisator Company was entered into pursuant to 12-572 of our statutes. This first count has been brought pursuant to 12-572.[1]
The second count of the third party pleading is framed in active/passive negligence bottomed upon G.I.'s duty arising under the written contract and provides that if Valentino suffered any damages, then they were caused by "the primary, active and direct negligence of the third party defendant rather than the passive and secondary negligence, if any, of the defendant [G.I.]." Third Party Complaint, dated May 4, 1990, the second count. #6. G.I.'s third count also sounds in contract and avers that the written agreement between it and the state "contained an implied duty. . .to indemnify and hold harmless" G.I. for damages caused by the state for "negligence in the performance of its duties" under the contract. Id., third count, #8. Further, in this count, G.I. alleges that if Valentino is permitted to recover against G.I., then G.I. "is entitled to indemnification under the implied provisions of" the contract. Id. #8. Accordingly, each of the three counts is based upon the state's being liable only if G.I. is determined by the trier to be liable to Valentino.
In defense of the third party complaint, the state has set up as a first special defense a claim that G.I.'s third party pleading "is not maintainable against the Sovereign State of Connecticut." First Special Defense, dated October 9, 1990. Now, the state has filed this motion to dismiss on jurisdictional grounds and claims that the third party complaint "is not maintainable against [the state]. . .because the State has not expressly consented to or authorized, . . .[the] action." Motion to Dismiss Third Party Complaint, dated June 10, 1991, #2. — We agree and grant the motion.
 II.
A motion to dismiss, in our practice, is used to test whether, on the face of the record, as here, the court lacks jurisdiction. Upson v. State, 190 Conn. 622, 624 (1983). A subject matter jurisdictional claim may be raised at any time. Connecticut Practice Book 145: Park City Hospital v. Commission on Hospitals and Health Care, 210 Conn. 697, 702-03 (1989); and the issue of sovereign immunity may be properly raised by such a motion to dismiss. Duguay v. Hopkins, 191 Conn. 222, 227 (1983). CT Page 8949
Here G.I. recognizes that it is suing the state and claims that pursuant to 12-572 (f), the state in its contract with G.I. has effectively waived its sovereign immunity to allow this third party action.
The legislature may waive the sovereign immunity of the state by statute "provided clear intention to that effect is disclosed by the express terms or by force of a necessary implication." Id. at 228. However, "statutes in derogation of sovereign immunity should be strictly construed." White v. Burns, 213 Conn. 307, 312
(1990) (citations omitted). Where there is any doubt about statutory meaning or intent, such statutes are to be given the effect which makes the least rather than the most change in sovereign immunity. Id. Thus, a party plaintiff, asserting legal viability for its complaint against the state "must prove that there is a precise fit between the narrowly drawn reach of the relevant statute, . . .and the contractual language upon which the plaintiff relies." Berger, Lehman Associates, Inc. v. State,178 Conn. 352, 355-56 (1975).
The Berger court held that a planning contract for the relocation and improvement of state roads did not "precisely fit" within the intended scope of 4-61 of our statutes, waiving sovereign immunity for breach of contract claims with the state involving the design of state public works. In Burger, the supreme court noted that since there was no "precise fit", the trial court did not have subject matter jurisdiction. There, the plaintiff's contracted work with the state was for planning and not for the actual design of a public work to be constructed. Burger at 358. Later, our supreme court, applying the "precise fit" language of Berger, held that a contract with the state to construct a city bridge and street in Middletown, Connecticut was also not within the reach of 4-61 because the object of the contract was construction of municipal facilities, not state facilities. Thus that contract did not "precisely fit" within the sovereign immunity waiver provisions of 4-61. DeFonce Construction Corporation v. State, 198 Conn. 185, 88-89 (1985).[2]
Here the third party plaintiff, G.I., has framed each of the counts in its action upon the present possibility of the state's liability. Thus, G.I., at this time, has no claim against the state, but may have one under the provisions of its contract if Valentino prevails and is awarded damages. Scrutinizing this third party complaint in light of our duty to construe strictly statutes such as 12-571 (f) waiving sovereign immunity in favor of the state and applying the mandates from Berger and DeFonce to determine whether a "precise fit" exists, we conclude that G.I.'s third party complaint alleging possible claims does not now present the "disputed claim" intended by 12-571 for a courtside trial. Accordingly, G.I. has not proven that the state has CT Page 8950 effectively waived its sovereign immunity for us to allow this litigation. Thus, we grant the motion to dismiss. Contra Formichella v. Amtote Systems, Division General Instrument Corp., aka, 4 C.S.C.R. 575 (June 19, 1989, Cretella, J.)
Additionally, upon further review, we think that our granting G.I.'s motion to implead the state under the authority of Practice Book 117 and 52-102 (a) of our statutes was improvidently granted. With the state impleaded, it is necessarily involved in a jury trial in Waterbury contrary to the expressed provisions of12-572 (f) waiving sovereign immunity for disputed contractual claims in a court trial in the Hartford/New Britain Judicial District. Thus, on our own motion, we also dismiss the third party complaint as having been improvidently allowed.
An order may enter accordingly.
WILLIAM PATRICK MURRAY A Judge of the Superior Court