MEMORANDUM OF DECISION
MANFREDI, J.
This is an appeal of a decision of the Mohegan Tribal Workers’ Compensation Commission rendered on June 4, 2009. The appeal is taken pursuant to MTC Section 4-207. This court’s decision is rendered pursuant to MTC Section 4—207(j) and raises an issue of first impression with this court.

ISSUES

The appellant has raised four issues in its brief:
I. STARE DECISIS
 “Stare Decisis is not a rule of law, but a matter of judicial policy.” 20 AmJur. 2d 520, Courts, Sec. 184.
In fact, the doctrine of stare decisis tells us that courts exercising lower jurisdiction must accept the law as set forth by decisions of a court of higher jurisdiction; White v. Burns, 213 Conn. 307, 335, 567 A.2d 1195 (1990) and decisions of one trial court are not binding upon another. Housing Authority of Enfield v. Rusotto, 2006 WL 76391 (Conn.Super.2006). The doctrine does not apply to decisions of Workers’ Compensation Commissioners except to the extent that such decisions should be given due deference when dealing with similar issues.
Here, Commissioner Pacelli was under no legal constraint to rule in a manner identical to his ruling in Giansanti v. MTGA, and moreover, an analysis of that case reveals sufficient factual differences such that it is readily distinguishable from the case at hand. In Gianscmti the Commissioner awarded full benefits but the number of weeks of disability payments *183 were reduced by a percentage based upon specific medical findings. Here the Commissioner awarded full benefits to Mr. Grady for the period of time his disability was attributed to his present injury as there was no medical evidence which indicated the period of disability was caused by any other condition. The Commissioner did not err by following a different course here than that taken in Giansanti.
II. LEGISLATIVE INTENT
In connection with the appellant’s claim that the commissioner abused his discretion regarding- the intention of the tribe’s risk management policy, this court notes that there is simply no evidence at all in the record regarding the legislative history surrounding the Mohegan Workers’ Compensation Act.
This Court declines to speculate regarding “legislative intent” and will not overturn the Commissioner’s decision based upon mere speculation.
III. CLAIMANT’S MEDICAL TREATMENT ENDED ON 12-18-08
Appellant also claims the Commissioner erred by determining that Mr. Grady’s medical treatment for this injury terminated on December 18, 2008.
Mohegan Tribe Code Section 4-207(g) states:
“The Mohegan Court shall not substitute its judgment for that of the Mohegan Workers’ Compensation Commission as to the weight of the evidence on questions of fact.”
As set out in the findings, the claimant treated with Dr. Pasha from July 17, 2008 and continued to see him until and through December 18, 2008 when Dr. Pasha turned the treatment over to Dr. West of the Veteran’s Administration. (Findings, lb-24). There is ample evidence in Dr. Pasha’s notes to support these findings, and the Court may not substitute its judgment for the Commissioner’s even if it disagreed.
Furthermore, the Respondent’s own “Revised Motion to Correct Finding” dated June 26, 2009 requested the Commissioner to add the following to his findings:
“The Claimant was totally disabled from work at Respondent-Employer Mohegan Sun Casino from 06/08/08 to 12/18/08.”
Clearly, Respondent’s position based on its Motion to Correct is that Claimant was totally disabled at least through December 18, 2008 when he last saw Dr. Pasha. The medical evidence in the record clearly supports the Commissioner’s findings and conclusions that Mr. Grady was totally disabled as a result of this injury through December 18, 2008.
IV.APPORTIONMENT
The crux of the appellant’s argument appears to be that because the claimant had a service related disability from his military service, any compensation he received following the work related injury of June 8, 2008 should be reduced by the percentage of that disability including any payment for temporary total disability. This argument is based upon the appellant’s interpretation of MTC 4-171(3). That statute reads that:
“For aggravation of a pre-existing injury or occupational disease, compensation shall be allowed only for that proportion of the disability or death due to the aggravation of the pre-existing injury or occupational disease as may be reasonably attributed to the injury upon which the claim is based.”
Although the Mohegan Workers’ Compensation Code defines the term “previous disability” it does not define the term “disability”. As noted in the American Medi *184 cal Association Guide to the Evaluation of Permanent Impairment, Fourth Edition:
“Disability may be defined as an alteration of an individual’s capacity to meet personal, social, or occupational demands, or statutory or regulatory requirements, because of an impairment. Disability refers to an activity or task the individual cannot accomplish.”
Here, although the claimant may have been suffering from a previous disability, as defined by the code, he was not “disabled” from performing the tasks of his occupation at the time of his injury in June of 2008, other than missing a few days of work per month. In all other respects he essentially worked full time performing the requirements of his occupation.
As Commissioner Pacelli noted:
“Claimant’s payroll records indicate that in the year prior to June 8, 2008 he averaged seven days a month of lost time from work due to chronic pain. However, he rarely lost more than a few consecutive days in a row. Only twice in this time period did he lose more than seven consecutive days or work due to chronic pain. Claimant always returned to unrestricted, full duty when he returned to work.” Commissioner's Finding of Fact and Award Number 8.
The Commissioner’s Conclusion in Paragraph E stated:
“As a result of the aforesaid, during the years that the claimant worked for the Mohegan Sun, he found it necessary to regularly take approximately 4-7 days per month of unpaid medical leave from his job due to flair ups of his back and/or neck. This medical leave rarely required him to miss more than a few days of work at a time. Additionally, when the claimant returned to work, he did so to full duty without restrictions. As this medical leave was unpaid and resulted in reduced earnings, the claimant’s compensation rate already reflects this loss of income. Thus, if a prior disability to the claimant’s back or neck can be sufficiently established, any proportionate reduction in compensation benefits due should only occur from PPD Benefits (Section 4—232(d)) not TTD Benefits (Section 4-230).”
The gravamen of the Respondent’s argument as this court understands it is that because the claimant had previously been rated with a 50% disability from the veteran’s administration all benefits including temporary total disability benefits should be reduced for the claimant by 50%.
The court disagrees.
First, Section 4-179 of the Mohegan Tribe Code states that the common law of the State of Connecticut is to be applied by this court where it is not in conflict with Mohegan Law in connection with any interpretations of the compensation code which are identical in substance to the Connecticut law. In this case, the definitions pointed out by the respondent are virtually identical to all of the Connecticut Statutes and therefore, the common law of Connecticut applies in the interpretation of these issues. This court takes judicial notice of the fact that under Connecticut law, temporary total disability benefits are not apportioned by reason of a pre-existing disability whether based upon a pre-existing injury or disease. The Court finds no conflict between this interpretation and any provisions of the Mohegan Law.
In its brief Appellant states that the: “Mohegan Workers’ Compensation Commissioners [who] have consistently argued that we are ‘wrong’ and that we should, follow the rule of the State of Connecticut system,—not apportioning anything on temporary or temporary partial for preexisting injuries ...”
*185 It is therefore clear that Appellant agrees that Connecticut law does not “apportion” temporary total benefits.
Although the Connecticut definition found in CGS 31-275(1)(D) does not include a pre-existing injury, only a preexisting disease, when a claimant with a pre-existing disease subsequently becomes totally disabled the temporary total disability benefits are not reduced by any proportional amount for a pre-existing rating. Instead, as here, the permanent partial disability benefits are apportioned based upon any previous ratings. The reason for this interpretation seems clear. When a worker is injured on the job and unable to work, he or she is entitled to collect the full temporary total disability available since they were, prior to the new work injury, working a schedule upon which their compensation rate was based.
A compensation rate takes into account whether the worker is working full time or part time, and is computed based on the average over a period of time.
A percentage of “permanent” disability related to the work related accident is in fact not computed until the worker has reached maximum medical improvement. It is only then that the commission can determine what percentage of disability is attributable to the incident in question. At that time the claimant is rated and given a percentage of disability based upon the incident in question taking into account any previous disabilities assigned. It would be virtually impossible to assign a percentage of temporary total disability related to an incident until such time as the claimant reaches maximum medical improvement.
Under most facts, as in this case, one day the claimant is working a certain percentage of his or her job and the next day due to an incident is totally out of work. That total disability is obviously caused by the new incident regardless of the previous condition of the claimant.
Mohegan Tribe Code Section 4-230(a) states that:
“If any injury for which compensation is provided under the provisions of this Article results in total incapacity to work, the injured employee shall be paid a weekly compensation equal to 75% of his average weekly earnings as of the date of the injury.”
Nothing in this language suggests that the compensation rate is adjusted for any preexisting injuries.
The Commissioner did not err in determining that Claimant was totally disabled from June 8, 2008 through December 18, 2008 and that he was entitled to his full compensation rate during that period.
The decision of the Commission is affirmed.